# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

ROY CHAMBERS, JR.,  )
  )
   Plaintiff,  )
  )
v.  )
  )  CV421-002
WARDEN BROOKS L.  )
BENTON, *et al*.  )
  )
   Defendants.  )

## ORDER

*Pro se* plaintiff Roy Chambers, Jr. has been granted leave to pursue this 42 U.S.C. § 1983 case *in forma pauperis*. *See* doc. 5 (Order); *see also* docs. 6-7. The Court granted him leave to file an Amended Complaint, doc. 13, and he has complied, doc. 14. The Court, therefore, proceeds to screen his Amended Complaint, pursuant to 28 U.S.C. § 1915A. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff, *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Although his

Amended Complaint fails to state a claim upon which relief may be granted, the Court will afford him an opportunity to amend his claims.

Chambers alleges that he "is a chronic care ADA [*i.e.*, Americans with Disabilities Act] inmate who suffers from sever[e] seizures, heart issues from several heart attacks, head and eye issues from multiple concussions, spine nerve damage, and . . . is bound to a wheelchair due to broken bones in his leg." Doc. 14 at 12. In April 2020, a fire broke out in the "ADA dorm" at Coastal State Prison. *Id.* Despite the fire, no alarm sounded and no prison staff responded "for over an hour." *Id.*[1] Because of the fire, he was exposed to "toxic smoke and . . . fire particles." *Id.*

He alleges he "received serious injuries,"[2] from the smoke exposure, and requested medical attention "the next day." Doc. 14 at 12-13. He states that unidentified "prison doctors denied [him] medical treatment

---

[1] Chambers has attached a copy of his request for medical treatment. *See* doc. 14 at 15. *Cf., e.g., Brown v. Mundy*, 2011 WL 6176740, at *2 n. 4 (S.D. Ga. Dec. 12, 2011) (citing *Joel V. HSBC Bank USA*, 420 F. App'x 928, 929 (11th Cir. 2011)) (considering a document attached to a complaint in a § 1915A screening). In that request, he states that he was "left in the fire and smokey dorm for over 30 minutes . . . ." *Id.* While not inconsistent with his allegation that he was exposed to the smokey environment for "over an hour," the discrepancy in descriptions is notable.

[2] Chambers' Complaint does not specifically identify the medical issues he reported, but the attached request states that he was suffering from "chest pain, trouble breathing, dizziness, and blurred vision" from the smoke exposure. Doc. 14 at 15.

and stated . . . as a reply on his sick call, 'your symptoms should have been [sic] resolved by now,' but the prison doctors never physically [saw] [him] . . . to properly diagnose what his symptoms were." *Id.* at 13. He alleges that, since the smoke exposure, he suffers from "an increase in his seizures, irregular breathing issues, irregular beating of his heart, chest and lung complications, dizzy spells, damage in eye vision, nerve damage in brain, migra[i]ne headaches, heavy coughing with colored mucus, and serious PTSD." *Id.* at 13.

## I. ADA Claim

The Court previously granted Chambers leave to file his Amended Complaint, in part, to add a claim under the Americans with Disabilities Act against the Georgia Department of Corrections and Costal State Prison. *See* doc. 13 at 2. Ordinarily, jails and prisons are not legal entities subject to suit. *See, e.g., Harmon v. Williams*, 2021 WL 93226, at *3 (S.D. Ga. Jan. 6, 2021) ("[L]ocal police departments and penal institutions are generally not considered legal entities subject to suit," and collecting cases). However, this Court has expressly recognized that the Georgia Department of Corrections and Coastal State Prison are subject to suit under the ADA's application to "public entities." *See*

*Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022) (citing, *inter alia.*, 42 U.S.C. § 12131(1); *United States v. Georgia*, 546 U.S. 151, 154 (2006)). Despite authorizing suits against public entities, the ADA does not authorize suits against individuals. *See Davis v. Georgia Dept. of Corrs.*, 2011 WL 1882441, at *5 (S.D. Ga. Apr. 21, 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003)); *see also Owens v. Sec'y, Fla. Dept. of Corrs.*, 602 F. App'x 475, 478 (11th Cir. 2015). Thus, to the extent that Chambers asserts an ADA claim against the individual defendants, Benton and Worthen, the claim fails.

"To state a claim under Title II, [a plaintiff must] allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." *Ingram v. Kubik*, ___ F.4th ___, 2022 WL 1042688, at *9 (11th Cir. Apr. 7, 2022) (quoting *Silberman v. Mami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)) (internal quotation marks and alterations omitted). "To get damages . . .

4

a plaintiff must clear an additional hurdle: he must prove that the entity he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

Chambers' Amended Complaint fails to state a viable Title II claim against either the Georgia Department of Corrections or Coastal State Prison.[3]  Even assuming that his allegations concerning his chronic health conditions, *see* doc. 14 at 12, are sufficient to allege his disability, he has not clearly alleged that he was excluded from or denied the benefits of any programs or services, much less that the denial or

---

[3] Chambers' ADA claim against the Georgia Department of Corrections faces additional hurdles. The Georgia Department of Corrections is, ordinarily, immune from suit. *See, e.g., Sumrall v. Georgia Dept. of Corrs.*, 2021 WL 4313606, at *3 n. 1 (M.D. Ga. Sept. 22, 2021) ("The Georgia Department of Corrections is an agency of the State of Georgia and is thus protected by sovereign immunity."). To determine whether the State's sovereign immunity has been effectively abrogated, the Court must consider each claim under a three-part test. *See Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *3 (11th Cir. Oct. 4, 2021). The test requires consideration of: " '(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). As in *Schwarz*, the Court need not conduct an abrogation analysis because Chambers fails to state a viable Title II claim. *See id.* at *4.

exclusion was "by reason of his disability." To be sure, the allegations that inmates were exposed to fire and smoke for an extended period of time are serious, but the fact that the fire occurred in "an ADA dorm," appears to be mere coincidence. Further, the Amended Complaint does not include any allegation concerning any individual's "deliberate indifference," which would be required to support Chambers' damages claim. *See, e.g., Silberman*, 927 F.3d at 1134 ("[I]n order to hold a government entity liable, the plaintiff must demonstrate that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf had actual knowledge of discrimination in the entity's programs and failed adequately to respond." (internal quotation marks, alterations, and citation omitted)).

## II. Section 1983 Claims

Chambers also asserts claims pursuant to 42 U.S.C. § 1983, for violations of his constitutional rights. In describing those claims, he does not explicitly identify the rights he contends were violated, but states that his claims sound in "deliberate indifference, cruel and unusual punishment, due process, ADA violations, [and] medical malpractice."

6

Doc. 14 at 3. The alleged "ADA violations," are discussed above. "Medical malpractice" does not implicate the Constitution. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Court can discern no allegations in the Amended Complaint even implicating "due process." *See generally* doc. 14. Accordingly, the Court considers whether Chambers has stated any claim for "deliberate indifference[ or] cruel and unusual punishment." *Id.* at 3.

The facts Chambers alleges might implicate "deliberate indifference [and] cruel and unusual punishment" in two ways, either because some defendant was deliberately indifferent to some risk or because some defendant was deliberately indifferent to Chambers' serious medical needs. Prison officials violate the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (internal quotation and citation omitted). To state a claim that a defendant was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, a plaintiff must allege (1) that he

7

suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Chambers has not sufficiently pleaded a claim under either theory.

The most glaring omission from Chambers' Amended Complaint is any allegation of deliberate indifference. Chambers does not allege that any defendant had any subjective knowledge of either the risks that led to the fire or his being trapped in the smokey dormitory. Although he alleges that he informed prison staff about the medical issues he suffered as a result, he does not allege that he informed any of the defendants named in this case, or even identify the individuals he did tell. *See* doc. 14 at 12-15. The Supreme Court has defined deliberate indifference in terms of the subjective recklessness used in the criminal law: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Negligence,

8

which arises when a person fails to live up to an *objective*, reasonable-man standard of conduct, falls far short of this *subjective* standard. *See Goebert*, 510 F.3d at 1326 (explaining that subjective component of deliberate indifference requires more than even gross negligence). In the absence of any allegation of any defendant's subjective knowledge, he fails to state any § 1983 claim.

Even if the Amended Complaint contained allegations concerning some defendant's subjective knowledge, Chambers has also failed to adequately allege the objective component of his claims. First, he has not identified any condition that created the risk that a fire would start or, having started, that inmates would be excessively exposed to smoke. The Court simply cannot say, therefore, whether such a risk would be "a substantial risk of serious harm." After all, "not all serious harm is precipitated by substantial risk; freak accidents do occur." *Brooks*, 800 F.3d at 1302. Moreover, the general symptoms of smoke inhalation do not, necessarily, constitute a "serious medical need." *See, e.g., Boyce v. Johnson*, 2015 WL 7351679, at *8 (N.D. Ill. Nov. 20, 2015) ("[M]ild smoke inhalation is generally not held to be a serious medical need," and collecting cases).

For the reasons explained above, even liberally construing Chambers' Amended Complaint, the Court cannot find that it states any claim upon which relief can be granted. It is, therefore, subject to dismissal. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Given the possibility that he might be able to supplement his allegations, however, the Court will afford him an opportunity to amend. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action." (citations omitted)). Accordingly, Chambers is **DIRECTED** to file a Second Amended Complaint no later than fourteen days from the date of this Order. The Clerk is **DIRECTED** to include a copy of form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)) for Chambers' convenience. Chambers is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Malowney v. Dec. Collection Deposit Grp.*, 193 F.3d 1342, 1345, 1345 n. 1 (11th Cir. 1999); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Chambers is further advised that failure to

submit his amended pleading may result in dismissal of his case for failing to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Meanwhile, it is time for plaintiff to pay his filing fees. Plaintiff's prisoner trust fund account statement reflects $20.00 in average monthly deposits. Doc. 7 at 1. Based upon his furnished information, he owes a $4.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Furthermore, the custodian also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next

institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED**, this 21st day of April, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA