# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ROY CHAMBERS, JR.,     )
                           )
     Plaintiff,      )
                           )
v.                   )         CV421-002
                           )
WARDEN BROOKS L.     )
BENTON, *et al.*,      )
                           )
     Defendants.     )

## ORDER AND REPORT AND RECOMMENDATION

The Court previously directed *pro se* plaintiff Roy Chambers, Jr. to amend his complaint, pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), to address his prior complaint's failure to state any claim upon which relief could be granted. *See generally* doc. 15. He has complied. *See* doc. 16. His most recent pleading sufficiently states a claim that may be served on several defendants, as explained more fully below. Several of his claims, however, should be **DISMISSED**. *See* 28 U.S.C. § 1915A.

The Court's prior Order explained the standards applicable to pre-service screening pursuant to § 1915A. *See* doc. 15 at 1-2. It also explained the general factual allegations Chambers makes in this case.

*See id.* at 2-3.  Generally, he alleges violations arising from the occurrence of a fire and defendants' failure to address the injuries he suffered during that fire.  *Id.*  The factual allegations in Chambers' most recent Complaint are largely the same as in his previous filings.  *See* doc. 16 at 13-19.  To the extent that the most recent allegations make a relevant difference, they are discussed below.

Before considering the substance of Chambers' claims, the Court must address the status of various defendants named in prior pleadings, but omitted from Chambers' current Complaint.  As the Court previously explained, doc. 15 at 10, amended pleadings supersede all prior versions. *See, e.g., Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir 2007).  Chambers' current amendment names six defendants: (1) Warden Brooks L. Benton; (2) "C. Worthen / Mack," the "ADA Coordinator for Coastal State Prison;" (3) "Mitchell," a corrections officer; (4) Dr. Awe; (5) Coastal State Prison; and (6) the Georgia Department of Corrections.  *See* doc. 16 at 2-3, 12.  Chambers' claims against defendants named in prior pleadings, but omitted from his most recent pleading, should be **DISMISSED**, including Deputy Warden C. Betterson, S.I.P.

Coordinator K. Finch, Unit Manager R. Jackson, and Doctor Agyemang. *See* doc. 1 at 3-4.

Substantively, the Court discerned three claims from Chambers' prior pleading, which he does not dispute. *See* doc. 15 at 3-9; *see also* doc. 16 at 3. The Court identified a potential ADA claim and two potential § 1983 claims, one for deliberate indifference to a serious risk and one for deliberate indifference to Chambers' serious medical needs. *Id.* The Court will discuss those same claims, as stated in his most recent pleading.

## I.   ADA Claim

Chambers' current pleading asserts a claim under the ADA, *see* doc. 16 at 3. As the Court previously explained:

> Ordinarily, jails and prisons are not legal entities subject to suit. *See, e.g., Harmon v. Williams*, 2021 WL 93226, at *3 (S.D. Ga. Jan. 6, 2021) ("[L]ocal police departments and penal institutions are generally not considered legal entities subject to suit," and collecting cases). However, this Court has expressly recognized that the Georgia Department of Corrections and Coastal State Prison are subject to suit under the ADA's application to "public entities." *See Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022) (citing, *inter alia.*, 42 U.S.C. § 12131(1); *United States v. Georgia*, 546 U.S. 151, 154 (2006)). Despite authorizing suits against public entities, the ADA does not authorize suits against individuals. *See Davis v. Georgia Dept. of Corrs.*, 2011 WL 1882441, at *5 (S.D. Ga. Apr. 21, 2011) (citing *Shotz v.*

3

*City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003));
*see also Owens v. Sec'y, Fla. Dept. of Corrs.*, 602 F. App'x 475,
478 (11th Cir. 2015). Thus, to the extent that Chambers
asserts an ADA claim against the individual defendants,
Benton and Worthen, the claim fails.

> "To state a claim under Title II, [a plaintiff must] allege
> (1) that he is a qualified individual with a disability; (2) that
> he was either excluded from participation in or denied the
> benefits of a public entity's services, programs, or activities,
> or was otherwise discriminated against by the public entity;
> and (3) that the exclusion, denial of benefit, or discrimination
> was by reason of his disability." *Ingram v. Kubik*, ___ F.4th
> ___, 2022 WL 1042688, at *9 (11th Cir. Apr. 7, 2022) (quoting
> *Silberman v. Mami Dade Transit*, 927 F.3d 1123, 1134 (11th
> Cir. 2019)) (internal quotation marks and alterations
> omitted). "To get damages . . . a plaintiff must clear an
> additional hurdle: he must prove that the entity he has sued
> engaged in intentional discrimination, which requires a
> showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at
> 1134 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d
> 334, 348 (11th Cir. 2012)).

Doc. 15 at 3-5.

As before, doc. 15 at 5, the Court assumes, without deciding, that

Chambers' alleged chronic health conditions, *see* doc. 16 at 16, are

sufficient to allege that he is an "individual with a disability." Chambers'

pleading now makes clear that he contends that his ADA claim is based

upon Costal State Prison's failure to adequately staff the dorm. *See* doc.

16 at 13-14, 17. Liberally construed, his allegation that the understaffing

was a particular problem for disabled inmates is sufficient to allege the

second element of his Title II claim.  *See, e.g., United States v. Georgia*, 546 U.S. 151, 157 (2006) ("In fact, it is quite plausible that . . . refusal to accommodate . . . disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted "exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." (internal quotation marks, citation, and alterations omitted)).  His pleading, however, does not include any allegation that supports the third element.  His allegation that understaffing is a general problem at Coastal belies any assertion that discriminatory animus was the reason for the understaffing of the ADA dorm.  *See* doc. 16 at 13; *see also, e.g., McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("In everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome.  The ADA imposes a 'but-for' liability standard.").  Chambers' ADA claim should, therefore, be **DISMISSED**.[1]

---

[1]  Even if Chambers had met his pleading burden, his ADA claim would face several additional, and apparently insurmountable hurdles.  First, "[i]n the ordinary course, proof of a Title II . . . violation entitles a plaintiff only to injunctive relief." *Silberman*, 927 F.3d at 1134.  Chambers does not seek injunctive relief, only monetary damages. *See* doc. 16 at 5.  Entitlement to monetary damages under the ADA would require him to show "intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134.  "That is an exacting standard, [cit.],

## II.    Section 1983 Claims

The Court previously identified two potential § 1983 claims implicated in Chambers' prior pleading.  *See* doc. 15 at 6-9.  First, the Court discerned a possible claim alleging that some defendant was deliberately indifferent to the risk of fire in the dorm where Chambers was housed.  *See id.* at 7 (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).  Second, the Court discerned a potential claim that some defendant was deliberately indifferent to Chambers' serious medical needs.  *Id.* at 7-8 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).  The Court explained that, even assuming he could plead the other elements of either claim, he had failed to sufficiently plead the "subjective component" of such a claim.  *See id.* at 8-9.

---

which requires showing more than gross negligence, [cit.]."  *McCullum v. Orlando Reg'l Healthcare Sys, Inc.*, 768 F. 3d 1135, 1147 (11th Cir. 2014) (internal quotation marks and citations omitted).  Chambers' allegations concerning noncompliance with ADA regulations, at most, establish defendants knew facts from which an inference could be drawn that harm to prisoners' ADA rights was likely, but not that they actually drew such an inference.  *See, e.g., Lantis v. Marion Cnty.*, 2014 WL 1910960, at *4 (D. Or. May 13, 2014) (citing *Duval v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001)).  As discussed in the prior Order, even if Chambers pleaded an ADA claim against the Georgia Department of Corrections, that claim could only proceed if the Court determined that the State's sovereign immunity had been effectively abrogated.  Doc. 15 at 5 n. 3 (citing *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *3 (11th Cir. Oct. 4, 2021)).

Chambers has still not sufficiently pleaded a claim arising from any defendant's deliberate indifference to the fire risk. His amended pleading does allege chronic understaffing and lack of fire warning systems. Those allegations are sufficient to support the objective component of his claim. *See, e.g., Hadix v. Johnson*, 367 F.3d 513, 528 (6th Cir. 2004) (reviewing "cases dealing with fire safety in the constitutional context," involving "a continuum of various violations of fire safety, generally, and fire safety codes, specifically," and finding that some safety practices "amounted to a constitutional violation while others did not," and collecting cases). However, the *fact* of those fire safety issues, even coupled with Chambers' allegations concerning several defendants' responsibility to oversee safety procedures, *see, e.g.,* doc. 16 at 17 (alleging "Defendant Worthon / Mack is supposing to ensure the ADA Title II SOP policies are enforced,"), does not allege that any defendant was *subjectively aware* of the risk. *Cf. Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (liability requires that a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious haram exists, and he must also

draw the inference.").  His indifference-to-risk claim should, therefore, be **DISMISSED**.

Chambers' claim related to his medical needs, however, is sufficient for service.  The Court previously explained that Chambers had not alleged a sufficiently serious medical need to support a § 1983 claim.  *See* doc. 15 at 9 (citing *Boyce v. Johnson*, 2015 WL 7351679, at *8 (N.D. Ga. Ill. Nov. 2015) ("[M]ild smoke inhalation is generally not held to be a serious medical need").  Chambers' amended pleading states that, after one of the defendants, Mitchell, let inmates out of the smokey dorm, he was "having trouble breathing, dizz[i]ness, blurred vision and chest pain." Doc. 16 at 14-15.  While symptoms of smoke inhalation might not, on their own, constitute a serious medical need, Chambers contends that, given his existing disabilities, including epilepsy and "heart issues," the seriousness was "obvious."  *Id.* at 16.  For screening purposes, that allegation is sufficient.  He also alleges that he reported his symptoms[2] to two defendants, Mitchell and Dr. Awe, and both denied him medical care.  *Id.* at 14-15.  His claim that defendants Mitchell and Dr. Awe were

---

[2] It is not clear from Chambers' pleading whether he contends that either Mitchell or Dr. Awe was specifically aware of his disabilities.  *See generally* doc. 16 at 15-16.

deliberately indifferent to his serious medical needs, therefore, can be served on those defendants.

### III.  Conclusion

As discussed above, Chambers has sufficiently alleged that defendants Mitchell and Dr. Awe were deliberately indifferent to his serious medical needs.  Since Chambers has failed to allege a Title II claim, that claim should be **DISMISSED**.  That claim was the only claim pending against defendants Coastal State Prison and the Georgia Department of Corrections.  *See* doc. 15 at 3-4 (citing, *inter alia.*, *Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022)).  Those defendants should, therefore, be **DISMISSED**.  To the extent that Chambers asserted any § 1983 claim against defendant Warden Benton, he has not included any allegation concerning Warden Benton's conduct. *See generally* doc. 16 at 13-19.  Since Benton may not be vicariously liable under § 1983, based on his supervisory role at Coastal State Prison, any such claim against Benton should be **DISMISSED**.  *See, e.g., Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014).  All claims against Benton should, therefore, be **DISMISSED**.  Finally, Chambers' claim that defendant "Worthen / Mack" was deliberately indifferent to the

serious risk of fire should be **DISMISSED**.  All claims against "Worthen / Mack" should, therefore, be **DISMISSED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Since plaintiff's Amended Complaint alleges a claim that survives screening, it may be served, and he is entitled to service by the United States Marshal.  *See* Fed. R. Civ. P. 4(c)(3).  Although Rule 4's Marshal-service mandate is clear, the Court's interest in preserving resources and minimizing burden on the Marshal's staff permit first attempting to secure defendants' waiver of formal service, as contemplated by Fed. R. Civ. P. 4(d) and this Court's Local Rules.  *See* S.D. Ga. L. Civ. R. 4.5 ("In cases in which the plaintiff is authorized to proceed [IFP] . . ., unless personal service by the Marshal is ordered by the Court, the Marshal may utilize any other form of service or waiver authorized by Federal Rule of Civil Procedure 4." (emphasis added)); *see also* Charles Alan Wright, Arthur R. Miller, *et al.*, 4A Fed. Prac. & Proc. Civ. § 1090 (4th ed. 2017) (noting that the policy supporting Marshal service for IFP plaintiffs "is to provide service for those who cannot afford private service," but "the plaintiff [or, in this case, the Clerk] should first attempt to make service by some other means provided for in the rule; only when this proves unfeasible" should service by the Marshal be used).  Other Courts have

also directed that Court staff make an attempt to secure defendant's waiver of formal service before requiring the Marshal to effect formal service. *See, e.g., Dunn v. Federal Express*, 2014 WL 1028949, at *2–3 (N.D. Ga. Mar. 14, 2014) (directing attempt to secure service waiver, and directing USMS service "[i]n the event Defendant does not return the Waiver of Service form to the Clerk of Court" within the specified period).

Therefore, the Clerk is **DIRECTED** to prepare a service waiver package for the defendants, Correctional Officer Mitchell and Dr. Awe, to be sent to them at Coastal State Prison at the following address:

> Coastal State Prison
> P.O. Box 7150
> Garden City, Georgia 31408.

That package must include, for each defendant: a Rule 4 notice of Lawsuit and Request to Waive Service of Summons (prepared by the Clerk); two copies of the Waiver of the Service of Summons form (prepared by the Clerk); an envelope addressed to the Clerk of Court with adequate first-class postage for use by the defendant for return of the waiver form; copies of the Complaint, doc. 1, the Amended Complaint, doc. 14, and the Second Amended Complaint, doc. 16, the Court's prior Order, doc. 15, and this Order and Report and Recommendation.

Next, the Clerk shall mail the service waiver package to the defendants at the above address.  The defendants are under a duty to avoid unnecessary costs of personally serving the summons.  If they fail to comply with the mailed request for waiver of service, they must bear the costs of personal service, unless good cause can be shown for failure to return the Waiver of Service form.  *See* Fed. R. Civ. P. 4(d)(2).  Should any defendant fail to waive service within sixty days following the date the service waiver package is mailed (the Clerk shall docket that act), the Clerk will prepare and transmit a service package to the Marshal.  The service package must include a fully completed USM 285 form, the summons, one copy of the Complaint, doc. 1, the Amended Complaint, doc. 14, and the Second Amended Complaint, doc. 16, one copy of the Court's prior Order, doc. 15, and one copy of this Order and Report and Recommendation.  Upon receipt of the service package, the Marshal is **DIRECTED** to promptly attempt to personally serve the defendants.

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 6th day of May, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

13