# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| ROY CHAMBERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-002 |
| | ) | |
| WARDEN BROOKS L. | ) | |
| BENTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

The Court previously directed service of *pro se* plaintiff Roy Chambers, Jr.'s § 1983 claim against defendants Mitchell and Awe. *See* doc. 17 at 8-9, 11-13. The Court recommended dismissal of his remaining claims. *See id.* at 9. Chambers has filed an Objection to that recommendation that includes additional factual allegations that were not contained in the Amended Complaint. *See* doc. 18. Since those additional allegations alter the Court's evaluation of Chambers' claims, the Court **VACATES** the prior Report and Recommendation. Doc. 17 (in part). The Order directing service remains valid. The Court now

proceeds to conduct the required screening, taking into consideration Chambers' newest allegations.

The Court's prior Order explained the standards applicable to pre-service screening pursuant to § 1915A. *See* doc. 15 at 1-2. It also explained the general factual allegations Chambers makes in this case. *See id.* at 2-3. Generally, he alleges violations arising from the occurrence of a fire and defendants' failure to address the injuries he suffered during that fire. *Id.* The factual allegations in Chambers' most recent Complaint are largely the same as in his previous filings. *See* doc. 16 at 13-19. To the extent that the Objection's allegations make a relevant difference, they are discussed below.

Before considering the substance of Chambers' claims, the Court must address the status of various defendants named in prior pleadings but omitted from Chambers' Amended Complaint. As the Court previously explained, doc. 15 at 10, amended pleadings supersede all prior versions. *See, e.g., Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir 2007). Chambers' Amended Complaint names six defendants: (1) Warden Brooks L. Benton; (2) "C. Worthen / Mack," the "ADA Coordinator for Coastal State Prison;" (3) "Mitchell," a

corrections officer; (4) Dr. Awe; (5) Coastal State Prison; and (6) the Georgia Department of Corrections. *See* doc. 16 at 2-3, 12. Chambers' claims against defendants named in prior pleadings, but omitted from his most recent pleading, should be **DISMISSED**, including Deputy Warden C. Betterson, S.I.P. Coordinator K. Finch, Unit Manager R. Jackson, and Doctor Agyemang. *See* doc. 1 at 3-4. Chambers' Objection does not assert any claim against those defendants. *See generally* doc. 18.

Substantively, the Court discerned three claims from Chambers' prior pleading, which he does not dispute. *See* doc. 15 at 3-9; *see also* doc. 16 at 3, doc. 18. The Court identified a potential ADA claim and two potential § 1983 claims, one for deliberate indifference to a serious risk and one for deliberate indifference to Chambers' serious medical needs. Doc. 15 at 3-9. Again, Chambers' Objection does not dispute the Court's interpretation of his claims. *See generally* doc. 18.

## I.    ADA Claim

Chambers' Amended Complaint asserts a claim under the ADA, *see* doc. 16 at 3. As the Court previously explained:

> Ordinarily, jails and prisons are not legal entities subject to suit. *See, e.g., Harmon v. Williams*, 2021 WL 93226, at *3 (S.D. Ga. Jan. 6, 2021) ("[L]ocal police departments and penal institutions are generally not considered legal entities subject

3

to suit," and collecting cases). However, this Court has expressly recognized that the Georgia Department of Corrections and Coastal State Prison are subject to suit under the ADA's application to "public entities." *See Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022) (citing, *inter alia.*, 42 U.S.C. § 12131(1); *United States v. Georgia*, 546 U.S. 151, 154 (2006)). Despite authorizing suits against public entities, the ADA does not authorize suits against individuals. *See Davis v. Georgia Dept. of Corrs.*, 2011 WL 1882441, at *5 (S.D. Ga. Apr. 21, 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003)); *see also Owens v. Sec'y, Fla. Dept. of Corrs.*, 602 F. App'x 475, 478 (11th Cir. 2015). Thus, to the extent that Chambers asserts an ADA claim against the individual defendants, Benton and Worthen, the claim fails.

> "To state a claim under Title II, [a plaintiff must] allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." *Ingram v. Kubik*, ___ F.4th ___, 2022 WL 1042688, at *9 (11th Cir. Apr. 7, 2022) (quoting *Silberman v. Mami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)) (internal quotation marks and alterations omitted). "To get damages . . . a plaintiff must clear an additional hurdle: he must prove that the entity he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

Doc. 15 at 3-5.

As before, doc. 15 at 5, the Court assumes, without deciding, that Chambers' alleged chronic health conditions, *see* doc. 16 at 16, are

sufficient to allege that he is an "individual with a disability." Chambers' pleading makes clear that he contends that his ADA claim is based upon Costal State Prison's failure to adequately staff the dorm. *See* doc. 16 at 13-14, 17. Liberally construed, his allegation that the understaffing was a particular problem for disabled inmates is sufficient to allege the second element of his Title II claim. *See, e.g., United States v. Georgia*, 546 U.S. 151, 157 (2006) ("In fact, it is quite plausible that . . . refusal of prison officials to accommodate . . . disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." (internal quotation marks, citation, and alterations omitted)). His pleading, however, does not include any allegation that supports the third element. His allegation that understaffing is a general problem at Coastal belies any assertion that discriminatory animus was the reason for the understaffing of the ADA dorm. *See* doc. 16 at 13; *see also, e.g., McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("In everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome. The ADA imposes a 'but-for' liability

standard."). Chambers' Objection includes additional allegations of various defendants' deliberate indifference, which might be relevant to his claim for damages under the ADA, but does not address the lack of any allegation supporting the third element of such a claim. *See generally* doc. 18. Chambers' ADA claim should, therefore, be **DISMISSED**.[1]

## II.   Section 1983 Claims

The prior Report and Recommendation analyzed Chamber's § 1983 claims under two theories. *See* doc. 17 at 6-9. First, the Court discerned a possible claim alleging that some defendant was deliberately

---

[1] Even if Chambers had met his pleading burden, his ADA claim would face several additional, and apparently insurmountable hurdles. First, "[i]n the ordinary course, proof of a Title II . . . violation entitles a plaintiff only to injunctive relief." *Silberman*, 927 F.3d at 1134. Chambers does not seek injunctive relief, only monetary damages. *See* doc. 16 at 5. Entitlement to monetary damages under the ADA would require him to show "intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134. "That is an exacting standard, [cit.], which requires showing more than gross negligence, [cit.]." *McCullum v. Orlando Reg'l Healthcare Sys, Inc.*, 768 F. 3d 1135, 1147 (11th Cir. 2014) (internal quotation marks and citations omitted). Chambers' allegations concerning noncompliance with ADA regulations, at most, establish defendants knew facts from which an inference could be drawn that harm to prisoners' ADA rights was likely, but not that they actually drew such an inference. *See, e.g., Lantis v. Marion Cnty.*, 2014 WL 1910960, at *4 (D. Or. May 13, 2014) (citing *Duval v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001)). As discussed in the prior Order, even if Chambers pleaded an ADA claim against the Georgia Department of Corrections, that claim could only proceed if the Court determined that the State's sovereign immunity had been effectively abrogated. Doc. 15 at 5 n. 3 (citing *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *3(11th Cir. Oct. 4, 2021)).

indifferent to the risk of fire in the dorm where Chambers was housed. *See id.* at 6-7. Second, the Court discerned a potential claim that some defendant was deliberately indifferent to Chambers' serious medical needs. *Id.* at 8-9. The Court approved for service his medical needs claim as against defendants Awe and Mitchell, but recommended dismissal of his claims related to the fire risk because he failed to allege several defendants' subjective awareness of the risk created by understaffing and defective fire warning systems. *See id.* at 7-8.

Chambers' Objection, however, supplies sufficient factual information to plead a claim arising from defendants Benton and Worthen-Mack's deliberate indifference to the fire risk. His amended pleading alleges chronic understaffing and lack of fire warning systems. *See* doc. 16 at 13-14. Those allegations are sufficient to support the objective component of his claim. *See, e.g., Hadix v. Johnson*, 367 F.3d 513, 528 (6th Cir. 2004) (reviewing "cases dealing with fire safety in the constitutional context," involving "a continuum of various violations of fire safety, generally, and fire safety codes, specifically," and finding that some safety practices "amounted to a constitutional violation while others did not," and collecting cases). His Objection includes, for the first

time, allegations sufficient to support defendants Benton and Worthon-Mack's subjective knowledge of those risks.  Specifically, he alleges that they "did daily and weekly inspections of the dorm . . . which showed the destroyed fire alarm system[']s wires hanging outside of the walls and not even connected."  Doc. 18 at 3-4.  He also alleges that "prison maintenance staff have put in work orders that are documented, to fix the fire alarm system for months, but the work orders would get ignored by the defendants . . . ."  *Id.* at 4.  Those allegations are sufficient to merit service of his claim on defendants Benton and Worthon-Mack.

Chambers' Objection also includes sufficient factual allegations to support a claim that defendants Benton and Worthon-Mack were deliberately indifferent to his serious medical needs.  The Court previously explained that Chambers had not alleged a sufficiently serious medical need to support a § 1983 claim.  *See* doc. 15 at 9 (citing *Boyce v. Johnson*, 2015 WL 7351679, at *8 (N.D. Ill. Nov. 20, 2015) ("[M]ild smoke inhalation is generally not held to be a serious medical need").  After Chambers amended his claims, *see* doc. 16, the prior Order and Report and Recommendation explained that Chambers' additional allegations concerning smoke inhalation, coupled with his chronic medical

conditions, was sufficient, for screening purposes, to allege a serious medical need. *See* doc. 17 at 8. His Objection now alleges that he informed "each defendant," including Benton and Worthon-Mack, "personally . . . about his injuries from the fire and his urgent need for medical treatment . . . ." Doc. 18 at 2. Based on that additional allegation, his claim that defendants Benton and Worthen-Mack were deliberately indifferent to his serious medical needs, therefore, can be served on those defendants.

## III.  Conclusion

As discussed above, Chambers has sufficiently alleged that defendants Benton and Worthen-Mack were deliberately indifferent to the risk created by the inoperative fire alarm, and that they were also deliberately indifferent to his serious medical needs. Since Chambers has failed to allege a Title II claim, that claim should be **DISMISSED**. That claim was the only claim pending against defendants Coastal State Prison and the Georgia Department of Corrections. *See* doc. 15 at 3-4

(citing, *inter alia.*, *Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022)).  Those defendants should, therefore, be **DISMISSED**.[2]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and

---

[2]  Chambers' Objection contains allegations about those entities' "subjective knowledge" of the risk of harm and his serious medical needs.  *See, e.g.,* doc. 18 at 6.  However, to the extent those allegations were intended to assert a § 1983 claim against those entities, as opposed to an attempt to supplement his Title II claim, such a claim is meritless.  As the Court previously explained, Coastal State Prison is not a legal entity subject to suit under § 1983.  *See* doc. 15 at 3 (citing *Harmon v. Williams*, 2021 WL 93226, at *3 (S.D. Ga. Jan. 6, 2021)).  Any claim against the Prison, pursuant to § 1983, therefore, fails.  The Georgia Department of Corrections is immune from suit under § 1983.  *See Jones v. Georgia Dept. of Corrs.*, 763 F. App'x 906, 907 (11th Cir. 2019) ("The Georgia Department of Corrections enjoys immunity from suit in a federal court under the Eleventh Amendment.").

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Since plaintiff's Amended Complaint, coupled with his new allegations in his Objection, alleges a claim that survives screening, it may be served, and he is entitled to service by the United States Marshal. *See* Fed. R. Civ. P. 4(c)(3).  Therefore, the Court **DIRECTS** that a copy of Plaintiff's Complaint, doc. 1, Amended Complaint, doc. 14, and Second Amended Complaint, doc. 16, a copy of the Court's Orders, docs. 11, 13, 15, and 17, a copy of Chambers' Objection, doc. 18, and a copy of this Order and Report and Recommendation shall be served upon Defendants Benton and Worthen-Mack by the United States Marshal without prepayment of cost.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Order and Report and Recommendation upon Plaintiff.  The

Court also provides the following instructions to the parties that will apply to the remainder of this action.

### INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.5.  A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised the Court's standard 140-day discovery period will commence upon the

filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness in order and word-for-word during the deposition.  Fed. R. Civ. P. 30(c).  Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## <u>INSTRUCTIONS TO PLAINTIFF</u>

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1.  Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the

Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.  *See generally* Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  *Id.*  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then

only to the extent necessary; and when needed for use at trial.  Local R.

26.4.

Interrogatories are a practical method of discovery for incarcerated

persons.  *See* Fed. R. Civ. P. 33.  Interrogatories may be served only on a

**party** to the litigation, and, for the purposes of the instant case, this

means that interrogatories should not be directed to persons or

organizations who are **not named** as a defendant.  Interrogatories are

not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff

wishes to propound more than 25 interrogatories to a party, Plaintiff

must have permission of the Court.  If Plaintiff wishes to file a motion to

compel, pursuant to Federal Rule of Civil Procedure 37, he should first

contact the attorney for Defendants and try to work out the problem; if

Plaintiff proceeds with the motion to compel, he should also file a

statement certifying that he has contacted opposing counsel in a good

faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c),

37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of

the case.  If Plaintiff loses papers and needs new copies, he may obtain

them from the Clerk of Court at the standard cost of fifty cents ($.50) per

page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to

attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion

for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be met by reliance on the conclusory allegations contained within the complaint.  If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.  If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 23rd day of May, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA