# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| ROY CHAMBERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-002 |
| | ) | |
| WARDEN BROOKS BENTON | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Pending before the Court are *pro se* Plaintiff Roy Chambers, Jr.'s

Motion for Entry of Default and Motion for Default Judgment, doc. 64,

Motion for Settlement Sum of Exact Amount, doc. 65, Motion to Amend

Amended Complaint, doc. 66, Motion for Default Judgment as to Herbert

Mitchell and Motion for Settlement of Financial Sum, doc. 69, Motion

Requesting to Finalize and/or Resolve Financial Default Settlement

Relief, doc. 73, and his Revived Motion for Summary Judgment, doc. 76.

Also pending is Defendants Benton, Mack, Michael Mitchell, and Awe's

Motion for Summary Judgment, doc. 78. All motions are ripe for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's claims stem from an April 17, 2020 fire which broke out in the "ADA dorm" at Coastal State Prison ("CSP") where he was housed. *See generally* doc. 16. Plaintiff's first Complaint asserted vague constitutional claims as well as an Americans with Disabilities Act claim. *See generally* doc. 14. Substantively, the Court discerned three claims from Plaintiff's pleading: a potential ADA claim and two potential § 1983 claims, one for deliberate indifference to a serious risk and one for deliberate indifference to Plaintiff's serious medical needs. *See* doc. 15 at 3-9. The Court directed Plaintiff to file his amended complaint with direction regarding those perceived claims. *Id.* at 10-11.

Plaintiff complied with the Court's Order and filed his Amended Complaint. Doc. 16. In it, Plaintiff alleged that, despite the fire, no alarm sounded and no prison staff responded "for over an hour." *Id.* at 13. Plaintiff claimed he was exposed to serious harm from inhaling smoke and fire particles, and his condition went ignored by medical staff at CSP. *Id.* at 14. Specifically, Plaintiff alleged that Defendant Mitchell did not allow him to see a doctor immediately following the fire, and that CSP Medical Director Dr. Awe refused to treat him sometime later, though

eventually Dr. Awe responded to the sick call saying "your symptoms should have been resolved by now." *Id.* at 15. Plaintiff reiterated his ADA claim as well. *Id.* at 3.

In his Amended Complaint, Plaintiff admitted that, before the fire, he was diagnosed by a physician with several ailments but alleges he suffered from injury by breathing in toxic smoke and being exposed to fire particulates after the incident giving rise to his claim. Doc. 16 at 16. He also claimed that "[b]y being a chronic care ADA inmate housed in the ADA dorm . . . defendants knew of [his] serious medical need." *Id.* at 17. He claimed the risks were ignored in disregard of "SOP" & ADA policies which require officials to ensure the fire alarm system is operational. *Id.* The Court screened the Amended Complaint and recommended dismissing individual defendants named in the original complaint but omitted from the amended complaint, as well as Plaintiff's ADA claim and his deliberate indifference to risk claim. *See* doc. 17 at 2, 5, 8. The Court ordered his medical claims be served as against Defendants Mitchell and Awe, *id.* at 8-9, and those Defendants waived service, *see* docs. 20, 28. In the meantime, however, Plaintiff objected to the Court's

recommendation of dismissal of his other claims against other Defendants. Doc. 18.

The Court reviewed his Objection, noting that it included additional factual allegations that were not contained in the Amended Complaint. *See* doc. 19 at 1. Specifically, as to his deliberate indifference claim, Plaintiff alleged in his Objection that CSP Warden Benton and ADA Coordinator Mack were aware that the fire alarm was not working, that they ignored requests by the maintenance staff for work orders to repair the system, and that prison understaffing contributed to or even caused Defendant Mitchell's slow response to the fire. *See generally* doc. 18. The Court conducted a new screening, taking those newly alleged facts into consideration, and again recommended dismissing Plaintiff's ADA claim and Defendants Coastal State Prison ("CSP") and the Georgia Department of Corrections ("GDC"), but found that Plaintiff had, by then, "supplie[d] sufficient factual information to plead a claim arising from defendants Benton and Worthen-Mack's deliberate indifference to the fire risk." Doc. 19 at 2-7; *see also* doc. 31 (adopting the Recommendation).[1] Eventually, all four Defendants appeared and

_____

[1] Chambers filed an untimely Objection to that Recommendation, which was

4

answered. Doc. 29. After discovery, *see* doc. 30, all parties moved for summary judgment, docs. 36 & 39.

However, Defendant Michael Mitchell then moved to file an amended answer. *See* doc. 38. Michael Mitchell, who was served and on whose behalf counsel answered, contended he was not, in fact, the "Mitchell" named in Chambers' pleading. *See id.* at 1-2. Instead, Michael Mitchell asserted via an affidavit that the individual implicated by Plaintiff's Complaint is named Herbert Mitchell. Doc. 38-1 at 2. Michael Mitchell's Motion was denied due to its failure to meet the good cause standard required by Federal Rule of Civil Procedure 16. Doc. 59 at 5 *adopted by* doc. 62. However, the Court directed the United States Marshal to serve "Correctional Officer Herbert Mitchell," and, given the procedural complexities involved, agreed to request *pro bono* counsel to represent Plaintiff. Doc. 48 at 7-9. The Court also terminated all pending motions and stayed the case. *Id.* at 9-10.

After the Court identified counsel willing to represent Plaintiff *pro bono*, doc. 49 at 1-2, counsel and Plaintiff were unable to reach an

---

construed as a Motion for Reconsideration, which was denied in part and dismissed in part. *See generally*, doc. 35.

agreement concerning that representation, doc. 51-1. Therefore, Plaintiff remains *pro se*. Meanwhile, the Marshal received an executed Waiver of Service from Herbert Mitchell. *See* doc. 52 at 2. Thereafter, Herbert Mitchell did not timely file an answer or otherwise participate in the case, so the Court directed the Clerk to enter his default. Doc. 59 at 7. At that point, given the persistent complexities and procedural oddities, the Court held a scheduling conference. *Id.* at 12; *see also* doc. 63. The Court also conducted an unsuccessful settlement conference. Doc. 75.

After the two conferences, Plaintiff "revived" his Motion for Summary Judgment. Doc. 76. He has also filed multiple motions seeking default judgment and damages against Herbert Mitchell, *see* docs 64, 65, 69, 73, and seeking to amend his complaint to add his previously dismissed ADA claims, *see* doc. 66. Defendants (except Herbert Mitchell) refiled their Motion for Summary Judgment and responded to Plaintiff's own Motion. *See* doc. 79. Plaintiff filed a "Brief in Support" of his Motion for Summary Judgment and a contemporaneous "Objection" to Defendant's Motion for Summary Judgment. Doc. 81.

# DISCUSSION

Given the tortured procedural history of this case, it is time for the Court to review the pending motions, beginning with the Plaintiff's Motion to Amend, doc. 66. The Court will then address Defendants' Motion for Summary Judgment, doc. 78, Plaintiff's Motions for Default and requests for damages, docs. 64, 65, 69, 73, and, finally, Plaintiff's Revived Motion for Summary Judgment, doc. 76.

## I.     Plaintiff's Motion to Amend is Denied

Plaintiff's Motion to Amend seeks to add his previously dismissed Americans with Disabilities Act ("ADA") claim. Doc. 66. Plaintiff expresses his fear that he "unknowingly may have allowed defendants to dismiss certain defendants," *id.* at 2, and he "objects" to the Court's dismissal of Defendants CSP and the GDC because they receive federal funding, *id.* at 3. He also appears to seek to add as Defendants "Dr. Agyemang," "Finch," and "Betterson." *Id.* at 9-10. To be clear, Plaintiff has not inadvertently dismissed or otherwise mistakenly failed to allege a claim against the GDC and CSP. To further clarify, the Court determined that the claims against them under the ADA were insufficiently pled, and that amendment would be futile because the

claims against them were fatally defective since he failed to allege any discriminatory animus. *See* doc. 19 at 5-6. The Court noted that "[e]ven if Chambers had met his pleading burden, his ADA claim would face several additional, and apparently insurmountable hurdles." *Id.* at 6, n. 1.

Under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *Toenniges v. Ga. Dept. of Corr.*, 502 F. App'x 888, 889 (11th Cir. 2012) (citing Fed. R. Civ. P. 15(a)(1)). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff's request to amend falls into the latter category, as it has been more than 21 days since Defendants answered or otherwise responded to his last Amended Complaint, doc. 16. Thus, leave to amend is required. *See, e.g.*, *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010); *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th

Cir. 2007). "A court may consider several factors when deciding whether to grant a motion to amend, including 'undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by prior amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340-41 (11th Cir. 2014) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.,* 556 F.3d 1232, 1241 (11th Cir. 2009)) (citations omitted) (alteration in original). Defendants oppose Plaintiff's Motion to Amend. Doc. 70.

As before, Plaintiff has failed to plead a claim against the GDC and CSP. Specifically, he has again failed to allege the third element of his ADA claim, that the exclusion, denial of benefit, or discrimination was by reason of his disability. *See* doc. 19 at 5-6 (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("In everyday usage, 'because of' conveys the idea of a factor that made a difference in the outcome. The ADA imposes a 'but-for' liability standard.") Plaintiff has not met the requirements under Rule 8 to plead this claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680- 681 (2009). And, as before, amendment would be futile; Plaintiff's additional allegations about the prison and the GDC

allegedly receiving funding from the federal government are not relevant to the analysis of any ADA claim. Plaintiff's allegations regarding the risk of fire have nothing to do with discrimination or any semblance of an allegation that the decision to delay fire system repair was based on his disability. Moreover, Plaintiff was given multiple opportunities to amend his Complaint and cannot at this late stage cure the already acknowledged deficiencies by amendment without prejudicing the Defendants and delaying the Court's process.

Next, to the extent Plaintiff seeks to amend his complaint to add more § 1983 claims against other individuals, amendment is likewise denied. Plaintiff's proposed allegations against these individuals consist of merely listing their name with a proposed cause of action afterwards. *See* doc. 66 at 9-10 ((1) "Dr. Agyemang-medical malpractice" (2) "Finch— improper boarding of disabled . . ." and (3) "Betterson was the warden . . ."). These allegations are so bare that the Court can hardly discern whether they constitute attempts to add claims, but to the extent they do, they could never state a claim under § 1983 since they are, at best, accusations of negligence. Plaintiff's Motion to Amend, doc. 66, is **DENIED** because his amendment request is untimely, it seeks to cure

deficiencies after repeated failure, and because the factual allegations cannot support a claim under the theories posited by Plaintiff.

## II.     Defendants' Motion for Summary Judgment Should Be Granted

Defendants'[2] brief in support of their Motion for Summary Judgment initially argues Plaintiff has not presented evidence of anything more than *de minimis* harm resulting from the fire, and that Plaintiff's recorded respiration rates, oxygen saturation rates, lung exams, and chest x-rays did not indicate Chambers suffered any harm from the fire.  Doc. 78-1 at 17 (citing doc. 78-11).  They rightfully argue that Plaintiff's allegations of injury lack supporting evidence and are conclusory.  They then argue that all defendants are entitled to qualified immunity because Plaintiff has failed to show they were deliberately indifferent.

### A. Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[2] Throughout Section II, "Defendants" corresponds to the Defendants who joined the Motion for Summary Judgment: Benton, Mack, Michael Mitchell, and Dr. Awe.  *See* doc. 78 at 1.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the summary judgment burden. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond

the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). Even still, the existence of material disputed facts will not defeat summary judgment in favor of a public official when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* at 322-23. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial. Finally, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380; *accord Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (discounting inmate's allegations of force and resulting injuries that were not supported by his medical record).

B. <u>Plaintiff Failed to Allege a Cognizable Injury</u>

Defendants explain that though Defendants Benton and Mack were aware that the fire prevention system in Plaintiff's building were not operational, neither of them had the authority to repair or replace it. *See* doc. 78-1 at 2-3 (citing docs. 78-4; 78-10). Therefore, "in order to ensure that inmates . . . were safe from fire and smoke inhalation . . . Warden Benton required (and Ms. Mack was aware that Warden Benton required) that correctional officers perform a 'fire check' every thirty minutes." *Id.* at 3. Defendants also state that "Warden Benton also required (and Ms. Mack was aware that Warden Benton required) the

officers to regularly perform a 'fire door' check, in which the officers were required to ensure that the fire doors were secured and the pathway from each 'fire door' to the yard was clear of any obstruction. *Id.* Defendants present evidence that a March 30, 2020 Fire and Safety Inspection was performed which showed that an evacuation plan was posted, the security officers and inmates were familiar with the evacuation plans, the telephone and radio systems in the control room were working, that a fire drill had been performed on that day, that the exit lights and emergency lights were working, that the exit way was clear, that all the keys, locks and doors in O Building were working, and that the exits from O Building to the outside were clear and working. *Id.* at 3 (citing docs 78-5). Though the inspection confirmed the smoke detectors and alarm system in the building were not working, the 30-minute fire watch was implemented to correct the deficiency. Doc. 78-5 at 3. The report indicates a project request had been submitted for the fire alarm system. *Id.*

Additionally, the record reflects that, on the evening of the fire, the CSP officers recorded their thirty-minute fire checks into a Fire Watch

Log.  Doc. 78-5 at 6.  The logbook submitted by Defendants indicates the

following events:

> C range started a [illegible] fire in the trashcan that smoked
> up both C and the D range. Called Mrs. Finch she came down
> to the O building and found out that they was upset by the
> fact that they didn't have a phone to use for the last five days.
> Was informed by Warden to let both C and D ranges out to
> the yard to let the Range air out and called maintenance to
> check out the phone situation.

*Id.* at 10.  Defendants claim that once the inmates were in the prison

yard, CSP medical staff examined each one of them to ensure that they

did not need further medical treatment that night, and they support this

assertion with an affidavit from the SIP Coordinator.  *See* Doc. 78-1 at 5

(citing doc. 78-9 at 2).

As to Plaintiffs alleged injuries, Defendants provide a review of

each documented occasion when Plaintiff submitted a Health Services

Form and documents showing other routine health monitoring.  *See* doc.

78-1 at 6-15 (citing doc. 78-12).  Defendants argue that Plaintiff was not

suffering from any ailments which could be attributed to the fire and

smoke exposure related to the fire.  *See id.* at 6-16.  Thus, Defendants

argue that Plaintiff is not entitled to compensatory damages because he

did not suffer any long-term breathing or lung injuries, or develop any

disease as a result of the fire of April 17, 2020. *Id.* at 17. They claim Plaintiff's preexisting conditions are to blame for the chest pain he suffers, and they support that contention with declarations and medical records. Docs. 78-11; 78-12. The damages issue is relevant, since under Section 1997e(e) of Title 42 (the "PLRA"), "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Defendants argue that Plaintiff cannot show any physical injury and therefore his action should be summarily dismissed.

Plaintiff's Response to the Motion for Summary Judgment mischaracterizes the Defendants' Motion, arguing they "admit and agree that injury occurred to plaintiff," and that he is "owed some amount of compensation" because Defendants attempted to reach a settlement with him. Doc. 81 at 2. He claims Defendants "acknowledge and/or agree that the conditions relating to the fire in his ADA dorm aggravated [his] preexisting conditions," though they have not admitted such. *Id.* at 42. As to the Defendants' argument that, since Plaintiff has shown no injury, his suit cannot proceed, Plaintiff does not controvert Defendants'

position.  Instead, he argues legal conclusions, *see id.* at 62 (explaining the "eggshell plaintiff rule"), harps on Defendants' failure to repair the fire prevention system, *id.* at 3, and cites Georgia law, *id.* at 67-68.

In one section, Plaintiff argues liability based upon Defendants' supposed awareness that he received new injuries which "could-of-have-had" aggravated his "major chronic care ADA pre-existing medical and mental health conditions." *Id.* at 64.  He then provides citation to a case where the mere "failure to maintain fire safety systems violated the Eighth Amendment because it created an environment where inmates were at significant risk of harm." *See* doc. 81-1 at 2.  However, the Court's own search for this case, "*Harris v. United States*, 354 F.3d 1287 (11th Cir. 2004)" was not fruitful,[3] and contrary to this supposed precedent, damages cannot lie under § 1983 without causation of some kind of injury.  The mere fact of inoperative systems without actual harm does not create constitutional liability.  Ultimately, though the Court infers that Plaintiff suffered discomfort while he awaited being released from

---

[3] Moreover, Plaintiff cited to *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), representing that it was a fire system safety case.  Doc. 81-1 at 4.  However, that case involved an arrestee who was prohibited from receiving scheduled dialysis treatment and suffered kidney failure.  The citation *Jones v. Runnels*, 461 F.3d 730 (9th Cir. 2006), is similarly flawed.  *Id.* at 15.

the smoky dorm, Plaintiff has not even made a *prima facie* case that he has been harmed at all, much less in a constitutional sense.

On the other hand, Defendants have presented evidence that Plaintiff's injuries are either nonexistent or were preexisting. When defendants meet their evidentiary burden, as Defendants have here, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment).

Simply, Plaintiff's pleadings do not create a genuine issue of material fact as to his claim. A genuine dispute of material fact exists

when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50; Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

Certainly, at the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *see also United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements

are self-serving, but that alone does not permit us to disregard them at the summary judgment stage . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, Plaintiff has offered only allegations of knowledge of a risk. His general, directly contradicted and merely "[c]onclusory, uncorroborated allegations . . . [do] not create an issue of fact for trial sufficient to defeat [Defendants'] well-supported summary judgment motion," which acknowledges the knowledge of risk but refutes suggestion that injury was caused by that risk. *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

In other words, Plaintiff has responded to the Defendants' Motion for Summary Judgment with conclusory allegations and legal theories but does not controvert Defendants' well supported argument that he was not injured in any way by the fire or smoke caused by the fire. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who

resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial."). Plaintiff has not set forth any facts showing there is an issue for trial. Thus, his claims should be dismissed.

C. Defendants Are Entitled to Qualified Immunity

The Court's summary judgment inquiry could end there, since Plaintiff has not shown any constitutional violation by virtue of failing to allege any evidence Defendants actually caused any injury whatsoever. *See Killian v. Holt,* 166 F.3d 1156, 1157 (11th Cir. 1999) (affirming district court's entry of summary judgment for defendants without qualified immunity analysis because plaintiff "failed to bring forth evidence from which reasonable jurors could find that defendant prison officials knew of and were deliberately indifferent to a substantial risk of serious harm"); *Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir. 1995) (affirming summary judgment for one defendant without relying on qualified immunity because the plaintiff's evidence was "insufficient to support the level of deliberate indifference and causal connection necessary"); *see also Cottrell v. Caldwell,* 85 F.3d 1480, 1489-92 (11th Cir. 1996) (in an interlocutory appeal of the district court's denial of summary

judgment, turning first to plaintiff's evidence of the constitutional violation itself and holding, "plaintiff has failed to show a violation of due process, and it necessarily follows that the defendants are entitled to summary judgment on qualified immunity grounds"). However, since Plaintiff has failed to articulate any constitutional violation by failing to point to evidence tending to establish deliberate indifference to risk of harm or medical need, Defendants are entitled to qualified immunity, thus providing a second, independently sufficient reason Plaintiff's claims should be dismissed. *See generally Adams v. Poag,* 61 F.3d 1537 (11th Cir. 1995) (interlocutory appeal of a district court's denial of summary judgment, holding defendants were entitled to summary judgment based on qualified immunity because plaintiffs had failed to present evidence of deliberate indifference to support their Eighth Amendment claim).

i.      *Qualified Immunity Standard*

Plaintiff brings his action under 42 U.S.C. § 1983. To prevail under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. 42 U.S.C. § 1983.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Consequently, Plaintiff's claims of § 1983 violations travel under the Eighth Amendment's prohibition against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1362 (11th Cir. 1999) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. *Farmer,* 511 U.S. at 832 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *see also Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010). "Qualified immunity gives government officials breathing room to make reasonable

but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. Defendant argues that because they were acting within their duties as state employees at all relevant times, they were acting within the scope of their discretionary authority. Indeed, it is clear that the defendants were acting within their discretionary authority as correctional officials at the time of the incidents at issue so "the burden shifts to [Plaintiff] to show that qualified immunity is not appropriate." *Id.*; *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Plaintiff must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a

constitutional violation and that the law governing the circumstances was clearly established at the time of the violation." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); *Youmans*, 626 F.3d at 562 (citation omitted). The Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Youmans*, 626 F.3d at 562; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson v. Callahan*, 555 U.S. 223, 241-242 (2009) (holding that a court may analyze the elements "in whatever order is deemed most appropriate for the case.").

### i. *Plaintiff's Deliberate Indifference to Fire Risk Claim Fails*

Even if Plaintiff had presented some cognizable injury, or even if the Court were to hold that nominal damages might be obtainable, Defendants are entitled to qualified immunity because Plaintiff has not shown a constitutional violation. For a plaintiff to demonstrate an Eighth Amendment deliberate indifference violation regarding conditions of confinement, he must satisfy both an objective and a subjective test. *Chandler v. Crosby,* 379 F.3d 1288-89 (11th Cir. 2004) The objective component requires an inmate to show first that "an objectively substantial risk of serious harm . . . exist[ed]." *Marsh v.*

*Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Second, "once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Id.*

Regarding the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . ." *Farmer*, 511 U.S. at 837-38. The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, which characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley,* 475 U.S. at 319. "Merely negligent failure to protect an inmate . . . does not justify liability under section 1983[.]" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Instead, a plaintiff must show the defendant acted with "subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (citing *Farmer*, 511 U.S. at 839). Notably, "[e]ven a 'prison official who actually knew of a substantial risk to inmate health or safety may

be found free of liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 1257 (quoting *Farmer*, 511 U.S. at 844) (punctuation omitted).

Plaintiff's claims against Defendants Benton and Mack fail because once again, Plaintiff has failed to controvert Defendants' well supported argument regarding the remedial actions taken to prevent harm resulting from a fire in the cell. Specifically, Warden Benton required that correctional officers perform a "fire check" every thirty minutes, in which the correctional officer would make sure that there was no fire or smoke. Doc. 78-1 at 19 (citing docs. 78-4; 78-10). In addition to the declarations in support indicating this was mandated, logs also reflect the correctional officers did conduct these checks. *Id.* Plaintiff never acknowledges this defense, and thus he never rebuts Defendants' assertion, which is bolstered by citation to facts in the record, they were not deliberately indifferent to the risk of fire and smoke harm. Therefore, while he argues there was a risk of harm, he does not even argue deliberate indifference to that harm by showing the remedial actions were unreasonable—except to say that the Defendants did not fix the fire prevention system. Contrarily, Defendants have shown they were not

indifferent to the harm, as they enacted measures to compensate pending the repair of the system.

Viewing the evidence in a light most favorable to Plaintiff, as the Court must do when ruling on a motion for summary judgment, Defendants Benton and Mack are entitled to qualified immunity on Plaintiff's claims because the evidence shows no wanton disregard of the challenged conditions. *See Whitley,* 475 U.S. 320 (finding a prison official must wantonly disregard prison conditions for an Eighth Amendment violation to occur); *Pearson*, 555 U.S. at 232 (finding a defendant is entitled to qualified immunity if a plaintiff fails to demonstrate a constitutional violation). Since there is no evidence that any defendant wantonly disregarded or was deliberately indifferent to Plaintiff's Eighth Amendment rights regarding the conditions in the ADA dorm at CSP, Plaintiff has failed to meet his burden of showing that Defendants committed a violation of a constitutional right, and they are entitled to qualified immunity on this claim. *See Wade*, 106 F.4th at 1253; *Hope*, 536 U.S. at 736.

*ii. Plaintiff's Medical Claims Fail*

Plaintiff's claims against Defendants Mitchell and Dr. Awe allege deliberate indifference to a serious medical care.  It is well settled that the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976)).  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

As in the prior claim, for Plaintiff to succeed on his deliberate indifference to medical care claim, he must establish three components:

(1) subjective knowledge of a risk of serious medical need; (2) disregard of that risk; (3) by conduct constituting subjective recklessness as used in the criminal law. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citing *Farmer*, 511 U.S. 825 and *Estelle*, 429 U.S. 97); *Wade*, 106 F.4th at 1255; *see also Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (describing the third prong as requiring "causation between that deliberate indifference and the injury). "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's *subjective knowledge*, as follows:

> since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness.

*Campbell,* 169 F.3d at 1364 (quoting *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir.1996) (quotation marks omitted)). In order to prove subjective knowledge, the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious

harm—with the caveat that, in any event, a defendant who "respond[s] reasonably" to a risk, *id.* at 844, even a known risk, "cannot be found liable" under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (citing *Farmer*, 511 U.S. at 837).

Plaintiff's allegations regarding the Defendants' disregard of his serious medical need assert the following:

> Before the fire, Chambers has been diagnosed by a physician with epilepsy, kidney failure, heart issues, head/brain issues, multiple concussions, nerve damage in his eye, spine, back, neck and a broken leg. Any lay person can obviously see that with chambers ADA disabilities, and being forced to inhale toxic smoke, be exposed to fire and fire particles for over an hour, creates a serious medical need, and that a doctor would need to be seen immediately and if that person (chambers) was not seen by a doctor and not given medical treatment (such as Chambers) this would meet the grounds the Court agrees upon as a serious medical need . . . .

Doc. 16 at 16. He later alleges that being a chronic care inmate proves the Defendants knew of his serious medical need. *Id.* at 17.

Plaintiff demonstrates his own misunderstanding of the requirements to overcome Defendants' summary judgment motion. His allegations indeed show that his prior conditions are serious, but in response to Defendants' Motion he fails to point to any evidence that his medical need after the fire mandated some care beyond that which was

given, such as, by example, coming forward with evidence that the fire exacerbated his preexisting conditions, or that his medical condition was so obviously poor that Defendant Mitchell was subjectively aware of it. Thus, Plaintiff has not shown he had a serious medical need at the time he was allegedly denied care for that medical need. *Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir. 2000) ("To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively 'serious medical need[ ], one that, if left unattended, 'pos[es] a substantial risk of serious harm'") (alterations in original) (citations omitted). Though his previously diagnosed medical needs might be serious, he did not show or even allege that Defendants caused them. At best, he alleges Defendants neglected them immediately after the fire, but that allegation amounts to mere negligence considering Defendants' well documented caregiving actions in the days that followed. To that end, Defendants have placed evidence in the record which shows, not only did Defendants repeatedly provide Plaintiff with medical care, but Plaintiff did not suffer any fire-related harm, much less one that rises to constitutional injury. *See*

*generally* doc. 78-1 at 21-23 (citing docs. 78-11, 78-12 (Dr. Awe's Declaration and notes from Plaintiff's medical visits.)[4]

Next, Plaintiff fails to show any Defendant's deliberate indifference to his allegedly serious medical needs. His claim centers on two main omissions: (1) immediately after the fire, Defendant Mitchell did not allow him to see the doctor; and (2) Doctor Awe returned his April 21, 2020 sick call with the response "your symptoms should have been resolved by now." Doc. 16 at 15. As to the first, his claim against Defendant Mitchell, Defendant Michael Mitchell argues that he was not working in the building on the evening of the fire. Doc. 78-6 at 2. Thus, he argues, he never prevented Plaintiff from receiving medical care. *Id.* However, even if Defendant Mitchell was the properly identified person, Defendants also counter Plaintiff's allegations by presenting evidence that every inmate in Plaintiff's dorm was examined by a CSP medical staff member in the CSP yard just after they were evacuated. *See, e.g.*, 78-9 at 2 (Finch declaration stating she "stayed with inmates in the yard

---

[4] On April 21, 2020, a few days after the fire, Plaintiff submitted a medical request form which states that he was left in the "fire and smoky dorm for 'over 30 minutes.'" Doc. 78-12 at 11. He now repeatedly claims he was exposed for over an hour, *see* doc. doc. 16 at 13. Given he has presented the Court with no evidence but merely his own conclusory allegations, such inconsistencies do his credibility no favors.

while CSP medical staff examined each and every inmate"); doc. 78-10 at 3. After Plaintiff continued to complain, Defendant Mack spoke with CSP medical staff to ensure his treatment. Doc. 78-10 at 3. Furthermore, Defendants note that because of the COVID-19 pandemic, CSP inmates were being examined by nurses daily to monitor the likelihood of inmates contracting the virus. Doc. 78-11 at 3-4. The medical team reviewed Plaintiff's temperature and oxygen saturation rate recordings during April 2020, which did not indicate any breathing complications. *Id.* at 4. Plaintiff does not respond to the Defendants' presentation of this evidence to support their defense. Therefore, even had Plaintiff correctly identified Herbert Mitchell, and even if Defendants had not inadvertently identified and then accepted service on Michael Mitchell as the proper Defendant, Plaintiff's allegations would fail. He has not shown deliberate indifference to medical needs because he has not controverted the Defendants' evidence he was examined right after the fire or refuted their evidence of continued monitoring of his condition thereafter, nor has he even alleged the requisite subjective recklessness. Plaintiff's reliance upon nothing more than his own allegations cannot

overcome the Defendants Motion and therefore his claim against Defendant Micheal Mitchell should be dismissed.

Plaintiff fails to show deliberate indifference as to Dr. Awe, as well. In his allegedly insufficient April 21, 2020 response to Plaintiff regarding his symptoms, Dr. Awe also stated: "your vitals (temp & oxygen) have all been normal range," indicating Dr. Awe reviewed Plaintiff's condition immediately upon his notice thereof. *See* doc. 78-12 at 11. Defendant Dr. Awe submitted a signed declaration regarding his treatment of Plaintiff, which again goes uncontroverted. *See* doc. 78-11. In his review of Plaintiff's care, he recalls that Plaintiff submitted a sick call slip on April 18, 2020, but Dr. Awe became aware of his condition on April 21, 2020. *Id.* at 3-4. He then checked Plaintiff's daily temperature and oxygen saturation recordings and found them normal. *Id.* at 4. He explains, given that several days had passed since the fire, and given that, in his professional opinion, symptoms from brief smoke inhalation would be temporary, he wrote to Plaintiff stating exactly what Plaintiff alleges, that: "[t]he symptoms should have resolved by now." *Id.*

Nevertheless, Plaintiff was seen on April 21 by Nurse Practitioner Agyemang, who did not note any issues breathing. *See* doc. 78-12 at 12.

Plaintiff was again seen on May 26 and May 28, when he received medications and other routine treatment from the providers. Doc. 78-1 at 8-9 (citing doc. 78-12 at 12- 15). According to medical records, he was then seen nearly once a month each month after that: on June 23, June 25, July 27, August 13, August 17, September 11, September 16, September 28, October 1, October 26, November 17, November 24, and November 30. *Id.* (citing doc. 78-12 at 16-30). Since his first medical request on April 18, 2020, Plaintiff did not indicate a fire or smoke related condition until January 5, 2021, when he complained of pain in his chest resulting from the smoke inhalation. He said then that the pain started on April 17, 2020, but the treating doctor noted no issues with his respiration rate, oxygen saturation rate, or lungs. Doc. 78-1 at 13 (citing doc. 78-12 at 31). In fact, Plaintiff signed a document on September 28, 2020, indicating he had no respiratory illnesses, including cough, shortness of breath, or fever. *See* doc. 78-12 at 25. Plaintiff then received a chest x-ray on January 7, 2021, which did not show any evidence of "acute cardiopulmonary disease, communicable disease or tuberculosis." *Id.* (citing doc. 78-12 at 32; *see also* doc. 78-11 at 12.). Plaintiff was seen

on January 19, 2021, February 12, April 12, and May 5. *Id.* at 13-15; *see also* doc. 78-11 at 12-14.

In sum, the medical records submitted by Defendants indicate no remarkable medical conditions, but they do indicate Plaintiff received medical treatment almost monthly from April 2020 until May 2021. *See generally*, doc. 78-11. Plaintiff offers no argument refuting the evidence of medical treatment he received after the incident. Because Defendants have come forward with evidence that Plaintiff received ample medical care which has gone uncontested by Plaintiff, he has failed to show Dr. Awe was deliberately indifferent to his medical needs. Thus, Dr. Awe is entitled to qualified immunity.

Each of Plaintiff's claims fail against the moving Defendants, first because he has failed to show any cognizable constitutional injury, and second, because Defendants are entitled to qualified immunity. Even if he had come forward with some evidence of harm, Defendants Benton and Mack are entitled to qualified immunity because Plaintiff has not shown they were deliberately indifferent to any risk of harm, given the uncontroverted evidence of their attempts to mitigate the risk of fire in his dorm. Similarly, Plaintiff's claims against Defendants Mitchell and

Dr. Awe should be dismissed and summary judgment granted in their favor because Plaintiff failed to show he had a serious medical risk to which they were deliberately indifferent. Therefore, they are also entitled to qualified immunity. Thus, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment, doc. 78, be **GRANTED**, and that Plaintiff's claims be **DISMISSED** against them.

## III. Plaintiff's Motion for Summary Judgment Should be Denied

Plaintiff's "Revived Motion for Summary Judgment," makes similar arguments to those he made in defense of the Defendants' Motion for Summary Judgment. Doc. 76. He claims that the evidence of the "increased risk of harm and danger" is obvious, that the evidence of actual injury is obvious, and that, since the parties agree to injury but disagree on amount of damages, there is proof that plaintiff is owed compensation for the "full extent of injuries." *Id.* at 2. Plaintiff relies on Georgia tort law to argue that even if his injury is *de minimis*, he is entitled to either $750,000.00 or $10,000,000.00 based on the damages provisions contained in Georgia statutes. *See, e.g., id.* at 31 ("In accordance with Georgia law, if plaintiff's pre-existing injuries were even

slightly aggravated, and or if plaintiff's pre-existing injuries were majorly aggravated from the fire that occurred in the dorm, defendants are liable for the full extent of plaintiff's injuries.").  He again repeatedly claims that Defendants have admitted that he was injured and that they owe him compensation.  *See generally, id.*  Plaintiff's Motion is unaccompanied by any exhibits indicating his injuries, despite his assertion that "evidence shows, by way of discovery given to plaintiff from defendants . . ." certain aspects of his claims.  *Id.* at 51.  Defendants' Response relies upon their own dispositive motion's briefing.  *See* doc. 79.

Plaintiff fails to meet the summary judgment standard and he is not entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  He has relied upon his own interpretation of the settlement conference and irrelevant law to seek judgment against Defendants.  To be granted summary judgment, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact."  *Moton*, 631 F.3d at 1341 (quoting Fed. R. Civ. P. 56(a)).  Plaintiff has failed to cite to anything in the record to prove his case, nor has he pointed to any verified, substantive allegations in his briefing which establishes his claims for deliberate indifference against any

moving Defendant, as discussed above. Therefore, Plaintiff's revived Motion for Summary Judgment, doc. 76, should be **DENIED.**

## IV.   Defendant Herbert Mitchell's Default

Defendants' summary judgment success does not end the Court's inquiry because Defendant Herbert Mitchell, who has never answered or filed a responsive pleading, remains in default. *See* doc. 60. Plaintiff has filed various motions seeking relief against him: a Motion for Entry of Default, doc. 64, Motion for Settlement Sum of Exact Amount, doc. 65, and a second Motion for Default Judgment, doc. 69.

Plaintiff's first Motion for Default Judgment argues "this court has found sufficient evidence, that defendant Mitchell was deliberately indifferent to plaintiff's serious medical needs . . . ." Doc. 64 at 3. Plaintiff also "reminds" the Court that Defendant Michael Mitchell's Motion to Amend remains fatally defective, and that "this Court has already resolved and vacated defendant Mitchell's Motion." *Id.* at 4. The Court has not made these findings, however, nor has it vacated anything filed by Defendant Michael Mitchell. Plaintiff then cites Georgia law in support of his claim, primarily focusing on the claim Defendants were deliberately indifferent to the risk of fire. *See generally*, doc. 64.

Plaintiff's second Motion for Default Judgment, doc. 69, argues that Defendant Herbert Mitchell's employer should be held liable by virtue of his employment. *Id.* at 2. He claims that Defendant Herbert Mitchell's employer "forced defendant Mitchell to work under very difficult conditions that violated the rights of Plaintiff, and caused injuries to plaintiff." *Id.* at 3. Thus, Plaintiff requests that both Defendant Herbert Mitchell and his employers, the GDC and CSP be liable to pay settlement amounts to Plaintiff in the amount of $1,000,000.00, one million dollars. *Id.* at 4.

Plaintiff also filed requests for damages. Docs. 65 & 73. In his "Motion for Settlement Sum of Exact Amount from Computation of Injuries Received From Defendants . . .in Accordance to and with, from Default Judgment Placed on Defendants," doc. 65, Plaintiff recounts his medical conditions by noting parts of his body without context, including listing injuries which could hypothetically be considered ones caused by smoke inhalation, as well as describing other alleged injuries, such as "epilepsy, leg pain, bone and disc joint pain, and major body pain," which could not. *Id.* at 2. Plaintiff recounts the settlement conference events, as he saw them, *id.* at 3, and then describes his injuries and treatment

in more detail.  *Id.* at 5.  He states he has calculated a sum for the injuries caused by Defendants, and that equals $10,000,000.00.  *Id.* at 6.  He claims that the "only further motion practice this court needs is to resolve the exact financial compensation owed to plaintiff in its exact sum." *Id.* at 9.  He claims liability is "obvious" and thus to consider the issue further would only serve to delay the inevitable.  *Id.*  Plaintiff then rehashes his claims and discovery disputes regarding documentary evidence, *see id.* at 20-23, 32.  Though Plaintiff claims that he has "over 100 JPAY kiosk digital receipts of medical complaints, delayed treatment, sick calls, missed appointments, complaints due to secondhand smoke, and injuries stemming from the fire," *id.* at 34, he does not submit them as evidence in support of any motion.

Finally, Plaintiff filed a "Motion in Request to Finalize Default Settlement Relief and Sum of Money Owed to Plaintiff . . . ."  Doc. 73.  Plaintiff claims that he is entitled to §750,000.00, along with court fees, legal cost, and interest, which he claims is the "original amount requested from plaintiff in his initial filing of this claim."  *Id.* at 2.  He claims that a default judgment against Defendant Herbert Mitchell entitles him to at least $750,000.00 because defendants "induced Plaintiff to rely on

their concessions that he/Mitchell was the proper defendant and indeed provide a benefit to Herbert Mitchell, against whom the claim should have been proceeding from that reliance (as this court has stated)." *Id.* at 4. He accuses Defendant Mitchell of fraud, and claims that his pleadings are to be treated "as if all evidence were properly supported." *Id.* at 4-7. He again lists his "injuries," including, for example, "bone and body pain." *Id.* at 10. He alerts the Court that he would rather settle for the $750,00.00 sum now than wait until a new scheduling conference is held. *Id.* at 12.

A. <u>Requirements for Default Judgment</u>

Though Plaintiff seeks default judgment assuming there is a "sum certain," there is no sum certain given the nature of the allegations and unproven damages in this case. Plaintiff also admits that the "exact amount owed to plaintiff has not been resolved yet." Doc. 65 at 11. In such cases, where the claim against a defaulted defendant is not "for a sum certain or that can be made certain by computation," a party must seek a judgment from the court. *See* Fed. R. Civ. P. 55(b)(1)-(2). As the Court of Appeals for the Eleventh Circuit has explained, "a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of

fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (internal quotation marks and alterations omitted) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because only well-pleaded factual allegations are deemed admitted, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

This Court has previously made clear that:

> Federal Rule of Civil Procedure 55(b) governs the Court's ability to grant a default judgment and vests the court with discretion to determine whether it should enter judgment. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). "[A] Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.' [*Nishimatsu Constr. Co.*, 515 F.2d at 1206]. . . . Three distinct matters are essential for the entry of default judgment: (1) jurisdiction; (2) liability; and (3) damages. *Pitts*, 321 F. Supp. 2d at 1356.

*Am. Contractors Indem. Co. v. Energy Smart Insulation Co., Inc.*, 2016 WL 3395546, at * 1 (S.D. Ga. June 15, 2016); *see also Laufer v. Rudra Sai, LLC*, 2021 WL 261674, at * 1 (S.D. Ga. Jan. 26, 2021) ("Under

Federal Rule of Civil Procedure 55(b), a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled." (internal quotation marks and citation omitted)).

   *i. Jurisdiction*

   The record in this case establishes that the Court has both subject matter jurisdiction over Plaintiff's claim and personal jurisdiction over Defendant Herbert Mitchell.  Since Plaintiff's claim against Defendant Herbert Mitchell arises under federal law, *i.e.* 42 U.S.C. § 1983, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  As to personal jurisdiction over the absent defendant, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  The record reflects that Defendant Herbert Mitchell is subject to general jurisdiction in Georgia.  *See* doc. 16, 64, 69 (alleging Defendant Herbert Mitchell was employed by Coastal State Prison ("CSP") and that the tortious conduct occurred in Savannah, Georgia);

*see also* docs. 50, 52 (signed certificate of service and waiver of service).

Accordingly, the Court should find that it has both subject-matter and personal jurisdiction.

### ii. Liability

Though Plaintiff apparently seeks to expand his claim against Defendant Herbert Mitchell to his deliberate indifference to risk of fire claim, the Court only approved service of his deliberate indifference to medical care claim against him. As the Court's above analysis explains, for Plaintiff to succeed on his deliberate indifference to medical care claim, he must establish three components: (1) subjective knowledge of a risk of serious medical need; (2) disregard of that risk; (3) by conduct constituting subjective recklessness as used in the criminal law. *McElligott*, 182 F.3d at 1255; *Wade*, 106 F.4th 1251. "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow*, 320 F.3d at 1243. Also as explained by the Court above, Plaintiff has not

articulated a claim of deliberate indifference to medical care claim against any Defendant.

Instead, in his Motions, docs. 64, 69, Plaintiff's arguments reflect fundamental misunderstandings of the Court's proceedings thus far. He appears to believe the Court already ruled in his favor on the merits of his claims. Doc. 64 at 4. By way of review and to clarify, the Court previously found that Plaintiff had pleaded sufficient facts to support *serving* a deliberate indifference to medical care claim against a Mitchell, later determined to be Defendant Herbert Mitchell. Doc. 17 at 8. Specifically, his claims against Defendant Herbert Mitchell, as articulated in the Amended Complaint, doc. 16, included the following:

(1) "Defendant Mitchell was the prison staff was supposed to be on duty at the time of the fire. Due to defendants CSP being overcrowded and understaffed at that time of the fire, Mitchell was forced to be the only prison staff to work/supervise two or more ADA buildings at that time, which meant that Mitchell had to supervise 400-800 ADA and non ADA inmates at one time all by himself;" and

(2) "After over an hour [after the fire started] Mitchell came to open the back door of the dorm, to let Chambers and the rest of the ADA inmates out to breathe and be away from the fire, fire particles and smoke. Chambers at that time asked Mitchell if he could be seen by medical staff because he was still having trouble breathing, dizziness, blurred vision and chest pain. Mitchell instructed Chambers to put a sick call in at medical the next morning. Chambers begged Mitchell that

> he needed to see immediately before morning, but Mitchell denied Chambers to see medical at that time. Chambers put a sick call on the next day but Defendant Awe denied Chambers medical treatment and refused to see Chambers."

Doc. 16 at 13-14. His earlier Complaint, doc. 14, was also approved for service since it, combined with his Objection to the Court's R&R substantiated his other claim. *See* doc. 17 *vacated on other grounds by* doc. 19. The Court approved his medical claim for service, finding only that, "[f]or screening purposes," Plaintiff's allegations were sufficient. Doc. 17 at 8.

However, determining that Plaintiff's case should be served is not the same as determining that default judgment is appropriate. Default judgment "is not granted as a matter of right, and in fact is judicially disfavored." *Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 868 (S.D. Ga. 1996) (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Prac. & Proc.* Civil 2d §§ 2681, 2685). "That is why F.R. Civ. P. 55(b)(2) vests the Court with judicial discretion in determining whether the judgment should be entered." *Id.* (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Prac. & Proc.* Civil 2d § 2685 at 421). "[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."

*Nishimatsu Constr. Co.*, 515 F.2d at 1204.  To that end, the burden is relatively light.  Plaintiff "need only establish a *prima facie* liability case against defendant."  *Pitts*, 321 F. Supp. 2d at 1357  (Motion for default judgment denied where plaintiff failed to establish *prima facie* case of justifiable reliance.  "A motion for judgment by default is not granted as a matter of right.  Rather the Court in its discretion may conduct a hearing requiring some proof from the [p]laintiff of the facts that must be established in order to determine [defendant's] liability"); *TeleVideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

Indeed, the Court previously acknowledged that plaintiff may not have adequately pleaded a serious medical condition or subjective or objective knowledge of a serious medical condition.  *See* doc. 15 at 8-9 (citing *Boyce v. Johnson*, 2015 WL 7351679, at *8 (N.D. Ill. Nov. 20, 2015) ("[M]ild smoke inhalation is generally not held to be a serious medical need," and collecting cases)).  While the Court allowed service of the complaint, the Court explicitly did not find that plaintiff had adequately pled all the elements of a claim of deliberate indifference, and in fact, acknowledged that the complaint had significant holes.

Moreover, as noted above, Plaintiff's allegations are largely legal conclusions, and he has failed to articulate the requisite subjective recklessness required to establish his claim. The deficiencies continue in his Motion for Default Judgment, where he asserts, without factual support, that Defendants, "including defendant Mitchell's unconstitutional actions and poor and cruel conduct during the times of the fire . . . caused injuries to plaintiff." Doc. 64 at 14. He further appears to admit Defendant Herbert Mitchell could not have acted to resolve the fire safety deficits or that he was not at fault, generally. *Id.* at 9 ("Defendant Mitchell did not have the proper instructions on how to handle the fire in plaintiff's dorm and removing plaintiff from the fire to avoid injuries to plaintiff."); *see also id.* at 10 ("Plaintiff only mentions [Mitchell's employment] to highlight how defendants who do have ability to make timely changes to the prison and to the dorm of plaintiff did not do so and are liable for plaintiff's injuries."). He claims, "Defendant Mitchell was forced to operate from a work capacity . . ." and alleges that "his higher-ranking chain of command . . . caused him to have to operate from an unlawful position." *Id.* at 11. This is not enough to support entering default judgment against Defendant Herbert Mitchell. Indeed,

Plaintiff argues that "Defendants have not produced any relevant evidence that proves them not liable for plaintiff's injuries to this court," *id.* at 7, disregarding the notion that he, in fact, carries the burden prove the Defendant injured him. Afterall, it is his case to prove.

In his second Motion, doc. 69, Plaintiff seeks to establish Defendant Herbert Mitchell's liability based upon his employment at CSP alone. He claims, "for Defendant Herbert Mitchell to have worked under color of state law, as a Georgia Department of Corrections (GDC) employee, at the time of injuries to plaintiff, makes the (GDC) liable to be sued for plaintiff's injuries and or –allows for defendants employer to be liable for injuries to Plaintiff." Doc. 69 at 2. To the extent Plaintiff believes the supervisory defendants are liable for Defendant Herbert Mitchell's actions, he is incorrect. "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1396 (11th Cir. 1994) (quotation omitted). Under § 1983, liability attaches to a supervisor only if the supervisor personally participated in the events, or if there is a causal connection between the action of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th

Cir. 1990). Plaintiff has not alleged that herein. Additionally, to the extent he seeks to do so, Plaintiff may not bring any claim against GDC or CSP for a violative policy of deliberate indifference in this case under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) at this late stage. His only surviving claims are those previously approved for service against the individual Defendants described herein.

However, even if the above noted deficiencies were cured and his claim properly alleged, Plaintiff would still not establish liability against Defendant Herbert Mitchell on his medical claim because he has only made arguments relevant to the deliberate indifference to risk of fire claim in his Motions for Default Judgment. He has failed to provide any argument that Defendant Herbert Mitchell, in not allowing him to see a doctor immediately, acted with the requisite subjective recklessness as used in the criminal law, by, for example, alleging that his symptoms were so dire they would have been obvious to Defendant Herbert Mitchell such that he should have intervened by alerting medical staff immediately. Plaintiff's Motions for Default only focus on the collective Defendants' failure to repair the fire prevention system, which is not his claim against Defendant Herbert Mitchell. For all these reasons,

Plaintiff has not established liability against Defendant Herbert Mitchell.[5]

### iii. Damages

Even if the complaint did plead a cause of action, a defaulted defendant is not deemed to admit the amount of damages claimed. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). In the absence of adequate factual basis in the record, the Court must hold a hearing to determine damages. *See Adolf Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded [on a default judgment] only if the record adequately reflects a basis for the award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (internal quotation marks and citation omitted)); *see also Pitts*, 321 F. Supp. 2d at 1356 ("[A] plaintiff must . . . establish that the amount [of damages] is reasonable under the circumstances[, and] . . . the Court can take evidence when necessary, or compute them from the facts of record.").

Generally, the measure of damages in a § 1983 action is determined

---

[5] To be clear, the Court does not require Plaintiff to overcome the Motion for Summary Judgment standard before recommending denying his Motion for Default Judgment. Instead, the Court finds that Plaintiff's unsupported and conclusory allegations do not allow him to obtain a default judgment against Defendant Herbert Mitchell.

"according to principles derived from the common law of torts." *Memphis*

*Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). The Eleventh

Circuit has explained:

> Section 1983 "creates a species of torts liability," and damages
> are determined by compensation principles of common-law tort.
> *Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 129
> L.Ed.2d 383 (1994); *Memphis Community School District [],* 477
> U.S. 299, 306 [] (1986); *Wright v. Sheppard,* 919 F.2d 665, 669
> (11th Cir. 1990). While defendants in § 1983 cases "are, as in
> common law tort disputes, responsible for the natural and
> foreseeable consequences of their actions," the § 1983 plaintiff
> must show causation. *Jackson v. Sauls,* 206 F.3d 1156, 1168
> (11th Cir. 2000). Causation has two required elements: cause-
> in-fact and legal or proximate cause. *Id.* at 1168 n. 16. To show
> that the constitutional tort was a cause-in-fact of the injuries and
> damages claimed, the plaintiff must show that "except for the
> constitutional tort, such injuries and damages would not have
> occurred." *Id.* To show that the constitutional tort was the legal
> or proximate cause of the injuries and damages claimed, a
> plaintiff must show that "the injury or damage was a reasonably
> foreseeable consequence of the [officer's] act or omission." *Id.*

*Smith v. City of Oak Hill, Fla.*, 587 F. App'x 524, 527 (11th Cir. 2014). In

the context of a default judgment, a plaintiff "must meet not only the

burden of proving the fact of damage but also the burden of proving a

basis for determination of the amount of damage. Although this burden

of proving the amount of damage is not an onerous one, it must still be

met." *Christiansen v. McRay*, 380 F. App'x 862, 863-64 (11th Cir. 2010)

(internal quotation marks and citation omitted). In his Motion for

Settlement Sum of Exact Amount, Plaintiff merely asserts that he is entitled to $10,000,000.00 in damages, lists ailments he suffers and claims that delaying settlement funds would be unconstitutional. Doc. 65 at 7, 11. His other Motion is equally unsupported. *See generally*, doc. 73. He must do more than simply assert that he is entitled to these damages at this stage. Instead, he must provide a factual basis in support of any damages in accordance with the following.

B. Plaintiff Must Support his Allegations

Plaintiff is **DIRECTED** to submit a response to this Order within 14 days addressing the deficiencies noted regarding Defendant Herbert Mitchell's liability and explaining the basis for calculating damages. He must file this response **IN ADDITION** to his objection to the R&R on the Court's recommendation on the competing Motions for Summary Judgment, as explained below. Upon receipt of his response, the Clerk of Court is **DIRECTED** to send a copy of this Order and that response to Defendant Herbert Mitchell for his response, if any. Defendant Herbert Mitchell shall have fourteen days after the Clerk's mailing to file a response. After the period for opposition, the Court will review Plaintiff's submission and determine if a hearing is warranted. Any such hearing

will be scheduled in a subsequent Order. In the meantime, Plaintiff's Motion for Settlement Sum of Exact Amount, doc. 65, is **DENIED**, as well as his Motion requesting to Finalize and/or Resolve Financial Default Settlement Relief, doc. 73. Given the deficiencies in Plaintiff's Motions for Default, his two Motions seeking settlement for sums certain are **DENIED**. Docs. 65, 73.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment, doc. 78, should be **GRANTED**, and Plaintiff's Motion for Summary Judgment, doc. 76, should be **DENIED**. Plaintiff's Motion to Amend, doc. 66, is **DENIED**, as well as his Motion for Settlement Sum of Exact Amount, doc. 65, and his Motion for Settlement Relief, doc. 73. Plaintiff is **DIRECTED** to address deficiencies contained within his Motions for Default Judgment, docs. 64 & 69, within 14 days, as well as submit his Objections, if any, regarding the Court's recommendation to grant Defendants' Motion for Summary Judgment and deny his, in accordance with the below instructions within that time as well.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED, REPORTED, AND RECOMMENDED,** this 22nd day of May, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA