IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| ROY CHAMBERS, JR.<br><br>Plaintiff,<br><br>v.<br><br>WARDEN BROOKS BENTON, et al.,<br><br>Defendants. | CIVIL ACTION NO.: 4:21-cv-2 |

**O R D E R**

After a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's May 22, 2025, Report and Recommendation, (doc. 82), to which Plaintiff, *pro se*, filed an Objection, (doc. 83). The Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted, and that Plaintiff's Motion for Summary Judgment be denied. Plaintiff was also directed to address deficiencies contained within his Motions for Default Judgment, (docs. 64 & 69), within 14 days of the Court's Recommendation. Plaintiff filed his Objection, but he did not file a separate response regarding the Motions for Default Judgment. (See generally, docket.)

**Background and Procedural History**

Plaintiff's claims stem from an April 17, 2020 fire which broke out in the "ADA dorm" at Coastal State Prison ("CSP") where he was housed when he was imprisoned. (See generally, doc. 14.) After reviewing his Complaint, the Court directed Plaintiff to file an amended complaint with direction regarding three potential claims: a potential Americans with Disabilities Act ("ADA") claim and two potential § 1983 claims, one for deliberate indifference to a serious risk and one for deliberate indifference to Plaintiff's serious medical needs. (See doc. 15, pp. 3-9.)

Plaintiff complied with the Court's Order and filed his Amended Complaint. (Doc. 16.) Plaintiff alleged that Defendant Mitchell did not allow him to see a doctor immediately following the fire, and that CSP Medical Director Dr. Awe refused to treat him sometime later. Though eventually Dr. Awe responded to Plaintiff's sick call, his only response was, according to Plaintiff, "your symptoms should have been resolved by now." (Id., p.15.) Plaintiff reiterated his ADA claim in his Amended Complaint as well. (Id., p. 3.)

The Court screened Plaintiff's Amended Complaint and recommended dismissing individual defendants who had been named in the original complaint but omitted from the amended complaint, as well as Plaintiff's ADA claim and his deliberate indifference to risk claim. (See doc. 17, pp. 2, 5, 8.) The Court ordered his medical claims be served as against Defendants Mitchell and Awe, (id., pp. 8-9), and those Defendants waived service, (see docs. 20 & 28). In the meantime, Plaintiff objected to the Court's recommendation of dismissal of his other claims against other Defendants. (Doc. 18.) The Court reviewed his Objection, noting that it included additional factual allegations that were not contained in the Amended Complaint. (See doc. 19, p. 1.) The Court conducted a new screening, taking those newly alleged facts into consideration, and again recommended dismissing Plaintiff's ADA claim and Defendants Coastal State Prison ("CSP") and the Georgia Department of Corrections ("GDC"), but found that Plaintiff had, by then, "supplie[d] sufficient factual information to plead a claim arising from defendants Benton and Worthen-Mack's deliberate indifference to the fire risk." (Doc. 19, pp. 2-7; see also doc. 31 (adopting the Report and Recommendations).) Defendants appeared and answered. (Doc. 29.) After discovery, (see doc. 30), all parties moved for summary judgment, (docs. 36 & 39).

However, Defendant Michael Mitchell then moved to file an amended answer. (See doc. 38). Michael Mitchell, who was served and, on whose behalf, counsel answered, contended

2

he was not, in fact, the "Mitchell" named in Chambers' pleading. (See id., pp. 1-2). Instead, Michael Mitchell asserted via an affidavit that the individual implicated by Plaintiff's Complaint is named Herbert Mitchell. (Doc. 38-1, p. 2.) Michael Mitchell's Motion was denied due to its failure to meet the good cause standard required by Federal Rule of Civil Procedure 16. (Doc. 59 at 5, adopted doc. 62.) However, the Court directed the United States Marshal to serve "Correctional Officer Herbert Mitchell." (Doc. 48, pp. 7-9). Herbert Mitchell did not timely file an answer or otherwise participate in the case, so the Court directed the Clerk to enter his default. (Doc. 59, p. 7.) After two conferences, Plaintiff "revived" his Motion for Summary Judgment, (doc. 76), and filed multiple miscellaneous motions seeking default judgment against Herbert Mitchell, (see docs. 64, 65 ,69, 73), and to amend, (see doc. 66). The Court denied his Motion to Amend, (doc. 66), his Motion for Settlement Sum, (doc. 64), and to Resolve Financial Default, (doc. 73), and recommended denying Plaintiff's Motion for Summary Judgment, (doc. 79). (Doc. 82.) As noted, the Magistrate Judge recommended Defendants' Motion for Summary Judgment be granted, (doc. 78-1). The Magistrate Judge directed Plaintiff to substantiate his requests for default judgment. Plaintiff filed an Objection, (doc. 83).

**Legal Standard**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the summary judgment burden. See Williamson Oil Co. v. Philip Morris

USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).  Even still, the existence of material disputed facts will not defeat summary judgment in favor of a defendant when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Id. at 322-23. Thus, under such circumstances, the defendant is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial. Finally, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380; accord Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (discounting inmate's allegations of force and resulting injuries that were not supported by his medical record).

## Discussion

The Magistrate Judge recommended Defendants' Motion for Summary Judgment, (doc. 78), be granted for two reasons. First, Plaintiff failed to allege a cognizable injury, and second, the Defendants are entitled to qualified immunity. (Doc. 82, pp. 14-39.) Regarding Plaintiff's own Motion, the Magistrate Judge found that Plaintiff failed to meet the summary judgment standard, since he merely relied on his own mistaken understanding of the implications of a settlement conference as well as irrelevant law to seek judgment against the Defendants. (Id., p. 40.) Plaintiff's Objection begins by making argument regarding the Court's earlier dismissal of his A.D.A. claims. He claims that since the GDC and the CSP receive federal funding from the A.D.A., they are entities that can be sued under the ADA. (Doc. 83, p. 4.) The Court has already explained to Plaintiff that this argument fails. (See doc. 19, pp. 3-6.)

The Magistrate Judge recommended the Defendants' Motion for Summary Judgment be granted because Plaintiff failed to allege a cognizable injury, and, even if he had, Defendants were entitled to qualified immunity. (See doc. 82, pp. 14-39.) As to those conclusions, Plaintiff mostly repeats his previous arguments. Plaintiff's Objection first claims that he did, in fact, receive a serious cognizable injury from the fire and that he currently receives medical treatment

5

and mental health treatment due to injuries he received during the fire. (Doc. 83, p. 5.) However, as before, Plaintiff fails to substantiate this claim with any evidence whatsoever, and his reference to "evidence" appears to include only his bare allegations. (Id., p. 5-6 (arguing "all evidence submitted in this objection, and in plaintiff's complaints and prior motion add to the evidence of why the defendant's summary judgement should be denied.") Plaintiff's bare allegations will not defeat summary judgment, especially because he did not even identify any injury which could be rationally traced to smoke inhalation from the fire or otherwise.

On the other hand, Defendants have presented evidence that Plaintiff's alleged injuries are either nonexistent or were preexisting. When defendants meet their evidentiary burden, as Defendants have here, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). Plaintiff has not addressed Defendant's assertion of fact by citing to materials in the record or otherwise supported his assertions of injury caused by the fire. Therefore, summary judgment is appropriate because there is no genuine issue of material fact that Plaintiff has a cognizable injury caused by Defendants. Greenberg v. BellSouth Telecommunications, Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) ("There is a genuine issue of material fact if the nonmoving party

has produced evidence such that a reasonable factfinder could return a verdict in its favor )(citing Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2000).  Plaintiff has merely offered allegations of knowledge of a risk in this case.  His general, directly contradicted, and merely "[c]onclusory, uncorroborated allegations . . . [do] not create an issue of fact for trial sufficient to defeat [Defendants'] well-supported summary judgment motion," which acknowledges the knowledge of risk but refutes suggestion that injury was caused by that risk. Solliday v. Fed. Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)); see also Holifield v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact), abrogated on other grounds by Lewis v. City of Union City, Ga., 918 F.3d 1213 (11th Cir. 2019).  Because Plaintiff has not shown cognizable injury caused by Defendants, summary judgment is proper.

The Magistrate Judge's second conclusion was that the Defendants Benton and Mack were entitled to qualified immunity on Plaintiff's deliberate indifference to risk claim, and that Defendants Mitchell and Awe were entitled to qualified immunity on Plaintiff's medical claim. (Doc. 82, pp. 28-29.)   In response to the Magistrate Judge's findings on the claims against Benton and Mack, Plaintiff repeats that the Defendants did not follow the proper "GDC SOP evacuation procedures" by failing to evacuate the A.D.A. dorm "immediately, and or, within the first five minutes."  (Doc. 83, pp. 7-9.)   He claims the officials behaved unreasonably in response to the fire, when "any reasonable jury and or layperson would easily be able to understand that the obvious thing for a person to do when faced with a situation like this is to evacuate plaintiff and the rest of the ADA. dorm . . . ."  (Doc. 83, p. 11.)   Without citing to the record, he claims Mitchell and another individual, Finch, admitted that they simply watched the fire burn, insinuating that the

two did not act to evacuate the dorm at all. (Id., p. 12.) As noted by the Magistrate Judge, "[t]he mere fact of inoperative systems without actual harm does not create constitutional liability." (Doc. 82, p. 18.) Moreover, Plaintiff failed to controvert Defendants' well-supported argument regarding the remedial actions taken to prevent harm resulting from the risk of fire in Plaintiff's cell. Specifically, Warden Benton required that correctional officers perform a "fire check" every thirty minutes, in which the correctional officer would make sure that there was no fire or smoke. (Doc. 78-1 at 19 (citing docs. 78-4; 78-10).) In addition to the declarations in support indicating this was mandated, logs also reflect the correctional officers did conduct these checks. (Id.) Plaintiff never squarely refutes Defendants' evidence that CSP medical staff examined each inmate after they were evacuated from the dorm to ensure they did not need further medical treatment immediately after the fire. (See doc. 78-9, p. 2.) In other words, Plaintiff never acknowledges the Defendants' defenses regarding deliberate indifference, and thus he never rebuts Defendants' assertion—which is bolstered by citation to facts in the record—they were not deliberately indifferent to the risk of fire and smoke harm. Therefore, Defendants Benton and Mack are entitled to qualified immunity on Plaintiff's claims because the evidence shows no wanton disregard of challenged conditions. See Pearson v. Callahan, 555 U.S.223, 232 (2009) (finding a defendant is entitled to qualified immunity if a plaintiff fails to demonstrate a constitutional violation); Whitley v. Albers, 475 U.S. 312, 320 (1986) (finding a prison official must wantonly disregard prison conditions for an Eighth Amendment violation to occur).

On his medical claims, Plaintiff argues "Defendant Mitchell was aware by Plaintiff's own admittance, and by seeing Plaintiff . . . that he needed more medical treatment and supervision," but was denied the ability to "go to medical to see someone for the pain and strange way that his body was feeling like after the fire." (Doc. 83, pp. 9-10.) However, though his first assertions

claimed that he had to wait for 30 minutes to be evacuated, in his Objection, he repeats his recent complaint that "[t]he defendants waited until over an hour to finally evacuate" the inmates. (Id., p. 9.) He then rehashes the same story regarding Dr. Awe's dismissiveness as he recounted in his original filings. (Id., pp. 16, 20-21.) Plaintiff does dispute certain facts asserted by Defendants. Although, according to Plaintiff, Defendants stated that January 7, 2021 was the first time Plaintiff complained about his injuries from the fire, they had actually received an email on September 8, 2020 from "T. Simpson-Dumas, who works in the office of Professional Standards/Compliance Division and is the GDC ADA coordinator." (Doc. 83, p. 17.) According to Plaintiff, the email stated that Simpson-Dumas received a complaint call from Plaintiff's mother regarding "her son (Plaintiff Chambers) having his ADA rights violated neglected, and deprived." (Id.) The email also mentioned that Plaintiff is a wheelchair user and asks the officials to inquire whether Plaintiff has a disability and the specific nature of Plaintiff's mother's complaint." (Id. at 18.) The Court's review of the email, attached to Plaintiff's Objection, indicates that indeed, Simpson-Dumas brought concerns regarding Plaintiff's need for a wheelchair, but the email did not mention the fire or injury caused by the fire. (Doc. 83, p. 52.) The Defendant-Warden Benton appears to have immediately forwarded the concern to Carl Betterson, Deputy Warden of Care and Treatment. (Id., p. 53 (Betterson's response to Benton, dated one day after Simpson-Dumas's September 8, 2020 email, September 9, 2020).) Betterson's response to the email indeed reflects knowledge of Plaintiff's concerns over the lack of response during the fire, the lack of a fire alarm, and the fact that several dorms are lacking a working fire system. (Id.) It notes that Plaintiff stated that there were issues associated with the building being appropriately staffed, and that the fire "caused health issues that have not been addressed." (Id.)

Plaintiff states in his Objection that on September 9, 2020, he met with the Defendants, and he explained about the fire in his dorm. (Id., p. 19.) Plaintiff says he explained that "no officer responded within a reasonable amount of time, and no fire alarm sounded, and plaintiff Chambers talked to the defendants about the health issues and injuries from the fire that had not been addressed yet." (Id.) He then says, "Plaintiff Chambers was immediately sent to medical after the meeting . . . ." (Id.) After the meeting, Plaintiff saw Dr. Awe, and though Dr. Awe had previously deprived him of his wheelchair, Dr. Awe re-assigned him a wheelchair and prescribed Plaintiff with medication and treatment. (Id., p. 20.)

Unfortunately, though Plaintiff has disputed the Defendant's assertion of facts, Plaintiff pled himself out of this claim. The record shows that the day after Simpson-Dumas's email—which Chambers acknowledges was the first time Defendants knew of his issue—he received a meeting where he was heard and immediately sent to be treated and received treatment. In other words, he has admitted that Defendant Awe provided him care immediately upon being told of his injuries. In Estelle v. Gamble, the Supreme Court established that "deliberate indifference" entails more than mere negligence. 429 U.S. 97 (1976). The Supreme Court clarified the "deliberate indifference" standard in Farmer v. Brennan by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. 825, 837 (1994) (emphasis added). In interpreting Farmer and Estelle, the Eleventh Circuit explained in McElligott v. Foley that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." 182 F.3d 1248, 1255

10

(11th Cir. 1999); see also Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Plaintiff's pleadings clearly indicate that even if he had a serious medical need, Dr. Awe was not deliberately indifferent to that need, and neither was any other Defendant. His own evidence bolsters the Defendant's defense: that Defendants provided medical care when they became aware of Plaintiff's complaints. (See, e.g., doc. 83, p. 54.) Although it is true that, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs," Plaintiff here has not come forward to refute Defendants' evidence that care was provided when requested at every instance, including the occasion Plaintiff mentions in his Objection. McElligott, 182 F.3d at 1255. On the other hand, and as the Magistrate Judge recounted in his R&R, the Defendants provided evidence in the record indicating Plaintiff was provided with medical care from Dr. Awe and others almost monthly from April 2020 until May 2021. (See, e.g., doc. 83, pp. 36-38; see generally, doc. 78-11.)

Defendants also counter Plaintiff's allegations against Herbert Mitchell, the official Plaintiff alleges is responsible for denying him the opportunity to be treated for medical needs immediately after the fire, by presenting evidence that every inmate in Plaintiff's dorm was examined by a CSP medical staff member in the CSP yard just after they were evacuated. (See, e.g., 78-9, p. 2 (Finch declaration stating she "stayed with inmates in the yard while CSP medical staff examined each and every inmate"); doc. 78-10, p. 3.) Plaintiff offers no rebuttal. Therefore, even had Plaintiff correctly identified Herbert Mitchell, and even if Defendants had not inadvertently identified and then accepted service on Michael Mitchell as the proper Defendant

instead of Herbert Mitchell, Plaintiff's claim would fail. He has not shown deliberate indifference to medical needs because he has not controverted the Defendants' evidence he was examined right after the fire or refuted their evidence of continued monitoring of his condition thereafter, nor has he even alleged the requisite subjective recklessness. Considering all of the above, Defendants Motion for Summary Judgment is **GRANTED**. (Doc. 78.)

Next, though Plaintiff does not object to the Magistrate Judge's Recommendation that his Motion for Summary Judgment, (doc. 76), should be denied, the Court construes his general Objection, (doc. 83), as one refuting the Magistrate Judge's recommendation on his Motion. The Magistrate Judge recommended denying Plaintiff's Motion because: he relied primarily on Georgia tort law, misunderstood and consequently misrepresented Defendants' position regarding the mediation, and generally failed to support his Motion with any exhibits or evidence of his allegations. (Doc. 82, pp. 39-40.) The Court agrees that Plaintiff has failed to meet the summary judgment standard, and he is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Thus, his Motion for Summary Judgment, (doc. 76), is **DENIED**.

Finally, the Magistrate Judge considered Plaintiff's requests for default judgment against the nonresponsive Herbert Mitchell. (Doc. 82, pp. 41-56.) The Magistrate Judge directed Plaintiff to submit a response to his Order within 14 days addressing deficiencies regarding Defendant Herbert Mitchell's liability and explaining the basis for calculating his damages. (Id. at 56.) The Magistrate Judge warned Plaintiff that he "must file this response **IN ADDITION** to his objection to the R&R . . . ." (Id.) Plaintiff failed to file any response to this order. Consequently, Plaintiff's Motions for Default Judgment, (docs. 64, 69), are **DENIED**. On that note, the Magistrate Judge already denied relief on Plaintiff's Motion to Amend, (doc. 66), his Motion for Settlement Sum of Exact Amount, (doc. 65), and his Motion for Settlement Relief,

12

(doc. 73). However, these motions remain pending before the Court. They stand **DENIED** on account of the Magistrate Judge's Order. The Clerk is **DIRECTED** to correct the docket to reflect the Magistrate Judge's disposition of those Motions.

In summary, the Court **ADOPTS** the Report and Recommendation as its opinion. (Doc. 82.) Defendant's Motion for Summary Judgment is **GRANTED**. (Doc. 78.) Plaintiff's Motion for Summary Judgment is **DENIED**. (Doc. 76.) Plaintiff's Motion to Amend, (doc. 66), his Motion for Settlement Sum of Exact Amount, (doc. 65), and his Motion for Settlement Relief, (doc. 73), stand **DENIED**. Plaintiff's Motions for Default Judgment are **DENIED**. (Docs. 64, 69). Plaintiff's Amended Complaint is **DISMISSED**. (Doc. 16.) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 2nd day of September, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA